2001 OK 101

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

**v.**

**Terry MALLOY, Respondent.**

**No. SCBD–4342.**

Supreme Court of Oklahoma.

Nov. 20, 2001.

Mike Speegle, Assistant General Counsel, OKLAHOMA BAR ASSOCIATION, Oklahoma City, OK, for Complainant.

Patrick J. Malloy, III, Tulsa, OK, for Respondent.

## OPINION

WATT, V.C.J.

¶1 Complainant, Oklahoma Bar Association, alleged two counts of misconduct against Respondent, Terry Malloy, to which Malloy filed his answer. A trial panel of the Professional Responsibility Tribunal conducted a hearing on the Bar's complaint on June 7, 2001. The parties entered into stipulations of fact, conclusions of law, and recommended discipline, which were attached in an exhibit to the Trial panel's report, filed July 9, 2001. On August 28, 2001 the Bar filed its application to assess costs in the amount of $574.80.

## COUNT I

¶2 Malloy, a licensed lawyer and member of the Oklahoma Bar Association, represented the defendant in a suit to dissolve a partnership. Malloy's client and the plaintiff in the case were partners. The case was set for trial on June 21, 1995. Shortly before trial, Malloy negotiated a settlement with the plaintiff's lawyer, which required Malloy's client to pay the plaintiff $200,000 in return for the assignment of oil and gas properties; plaintiff agreed that the case could be stricken from the trial docket. Although Malloy's client delivered checks to Malloy totaling $200,000, the client's bank account lacked sufficient funds for the checks to clear, a fact that was known to Malloy but which Malloy did not immediately make known to either the plaintiff or to his lawyer. The lawyer who was Malloy's opponent testified at the hearing before the trial panel that he thought Malloy had lied to him. It was Malloy's lawyer opponent who filed the grievance against Malloy that lead to this Count I.

¶3 After the plaintiff learned that the defendant's checks would not clear the bank, he filed a motion in the case to enforce the settlement agreement. The court entered judgment for plaintiff. At a hearing on plaintiff's motion for attorneys' fees and costs in October 1996, the trial court stated on the record that it believed Malloy knew at the time he negotiated the settlement agreement that his client had insufficient funds to consummate the settlement. Malloy stipulated with the Bar, and the trial panel found, that Malloy's conduct in giving rise to Count I violated Rule 8.4(c) of the Oklahoma Rules of Professional Conduct.[1]

## COUNT II

¶4 Count II arose from a grievance filed in 1997 by Nancy Gourley, a lawyer, on behalf of two of her clients, Roger Corday and Joyce Pendergrass. In early 1994, Corday responded to a newspaper advertisement for a "Business Opportunity." Art Nave, a non-lawyer had placed the ad. Nave told Corday that the purpose of his ad was to induce investors to invest money with him or a lawyer he selected to finance legal work on an Indian smoke shop. Corday ultimately signed a "Pre–Incorporation Agreement," that Nave presented to him, which covered a smoke shop to be located in Owasso, Oklahoma.

¶5 Malloy had represented Nave and Nave told Corday that he had a lawyer who specialized in the setting up of Indian smoke shops. Nave represented that the lawyer he selected would have no trouble in completing the legal work for the approval of the proposed smoke shop within ninety days. Nave, however, did not sign the agreement and later told Corday "that the Owasso project was not coming together as expected." Nave then presented a similar agreement to Corday and Ms. Pendergrass regarding another Indian smoke shop project, which was to be located at the traffic circle at Admiral and Mingo in Tulsa.

¶6 In April 1994, Corday and Ms. Pendergrass signed a "Pre–Incorporation Agreement and Letter of Intent" presented to them by Nave and Ms. Pendergrass paid Nave $3,000. Later in April, Nave, Corday, and Ms. Pendergrass met with Malloy at Malloy's office. Ms. Pendergrass paid Malloy $7,000 at that time. Malloy admits that he failed to explain to Ms. Pendergrass the com-

---

1. Rule 8.4(c), Oklahoma Rules of Professional Conduct provides:
   It is professional misconduct for a lawyer to:

   . . .
   c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

plexities involved in the project, including the possibility of substantial delay. Further, Malloy also admits that he did not tell Corday and Ms. Pendergrass that he had never completed an Indian smoke shop project from start to finish. Malloy had known Nave for fifteen years, had represented him in various matters over the years, and was representing him on a felony charge in Tulsa County at the time Nave introduced Malloy to Corday and Ms. Pendergrass.

¶ 7 Malloy took the position that the joint venture was his client and that he did not represent its members, Nave, Corday, and Ms. Pendergrass individually. Malloy did not explain to Corday and Ms. Pendergrass, however, the difficulties that might be presented if conflicts of interest should arise among the three joint venturers. Malloy concedes that his conduct in this regard constituted a conflict of interest.

¶ 8 Malloy regarded the $7,000 that Ms. Pendergrass paid to him as non-refundable but he did not explain this to her. The smoke shop project for which Corday and Ms. Pendergrass paid Malloy never opened. Malloy admits that he had an obligation to explain these things to Corday and Ms. Pendergrass but did not do so.

¶ 9 Malloy and the Bar stipulated, and the trial panel found, that Malloy's conduct giving rise to Count II violated the provisions of Rules 1.7,[2] 8.4(c) (note 1), and 1.5(b)[3], Oklahoma Rules of Professional Conduct, which violations constituted grounds for professional discipline.

2. Rule 1.7, Oklahoma Rules of Professional Conduct, Provides:

a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation

## MATTERS IN MITIGATION OF PUNISHMENT

¶ 10 Malloy has refunded all sums he received from Corday and Ms. Pendergrass and both have released Malloy from any civil liability.

## MATTERS IN ENHANCEMENT OF PUNISHMENT

¶ 11 On April 6, 1984 Malloy received a Private Reprimand from the Professional Responsibility Commission for conduct that occurred in 1981.[4] On July 19, 1996 Malloy received a Private Reprimand from the Professional Responsibility Commission for conduct arising out of his involvement with the smoke shop projects at issue here but involving different investors. Malloy, however, committed the acts at issue here long before the investigation began that resulted in the July 19, 1996 Private Reprimand.

## DISCUSSION

¶ 12 Malloy's acts warrant public censure. None of Malloy's clients suffered harm, either in the matters at issue here or in the matters giving rise to his two private reprimands. Further, while the displeasure of Malloy's opponent in the partnership dispute was understandable, the core problem was that Malloy's client lacked the money to fund a settlement. Despite Malloy's failure to make this fact known to plaintiff's counsel as soon as he should have done so, plaintiff and his lawyer were well enough satisfied with the terms of the settlement that they sought and received a judgment based on its terms.

shall include explanation of the implications of the common representation and the advantages and risks involved.

3. Rule 1.5(b), Oklahoma Rules of Professional Conduct, provides:

When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.

4. Malloy had sent a legal intern to enter a guilty plea in a DUI matter for Malloy's client. Malloy knew, though, that the client had a prior DUI, which Malloy had failed to reveal to the trial court before sentencing.

Neither Corday nor Ms. Pendergrass suffered any economic loss as a result of Malloy's failure to adequately explain to them the terms of the fee arrangement, nor did Malloy's clients in the matters giving rise to his two private reprimands. Further, Malloy has acted responsibly in this matter, fully explaining his conduct and accepting responsibility for his failings.

¶ 13 In circumstances where, as here, a lawyer has violated the Oklahoma Rules of Professional Conduct but has been guilty of no acts that have harmed his clients we have held that public censure is appropriate punishment. See *State ex rel. Oklahoma Bar Association v. Borders*, 1989 OK 101, 777 P.2d 929; *State ex rel. Oklahoma Bar Association v. Blackburn*, 1991 OK 35, 812 P.2d 379; and the cases cited in note 4 of *Blackburn*.

¶ 14 Our *de novo* review of this matter convinces us that public censure and the imposition of costs in the amount of $574.80 as a precondition to Malloy's continued practice of law, as recommended by the trial panel, is the appropriate punishment here.

¶ 15 HARGRAVE, C.J., WATT, V.C.J., HODGES, LAVENDER, KAUGER, SUMMERS, and WINCHESTER, JJ., concur.

¶ 16 OPALA, J., dissents.

¶ 17 BOUDREAU, J., disqualified.