2016 OK 11

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Mitchell Kevin LEONARD, Respondent.**

**SCBD No. 6156.**

Supreme Court of Oklahoma.

Feb. 2, 2016.

Katherine M. Ogden, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.

Mitchell Kevin Leonard, Idabel, OK, Respondent.

COLBERT, J.

¶ 1 The Oklahoma Bar Association (Bar) filed a complaint and later an amended complaint alleging a total of twelve counts of professional misconduct against Respondent Mitchell Kevin Leonard pursuant to Rule 6 of the Rules Governing Disciplinary Proceedings (RGDP), Okla. Stat. tit. 5, ch. 1, app. 1–A (2011), based on violations of several of the Oklahoma Rules of Professional Conduct (ORPC), Okla. Stat. tit. 5, ch. 1, app. 3–A (2011). The Bar seeks to have Respondent disbarred, while Respondent requests to be allowed to practice with a probationary period imposed. The Professional Responsibility Tribunal (PRT) has recommended that Respondent be suspended for two years and a day, be ordered to contract with Lawyers Helping Lawyers, and be ordered to pay restitution and costs of the disciplinary proceedings. After a full and non-deferential examination of this original proceeding for lawyer discipline, this Court imposes disbarment as the appropriate sanction for Respondent's actions. Further, restitution of unearned fees or reimbursement of the Client Security Fund shall be a condition of reinstatement. Additionally, the costs of this proceeding are imposed.

FACTS AND PROCEDURAL HISTORY

¶ 2 On July 28, 2014, the Bar filed a formal complaint against Respondent alleging nine counts of professional misconduct. The complaint was amended on November 14, 2014, to add three additional counts. At the time of the formal complaint, Respondent was under administrative suspension for failure to pay dues and maintain continuing legal education requirements. Respondent was reinstated from both suspensions by July 30, 2014.

¶ 3 The Bar's initial complaint included a request for immediate interim suspension pursuant to Rule 6.2A of the RGDP. The Bar argued that Respondent's continued practice constituted an immediate threat of substantial and irreparable public harm as the Bar continued to receive grievances alleging Respondent was taking fees from clients and failing to communicate with them and to perform services. On August 20, 2014, this Court issued an order directing the Bar to show cause why the matter should not proceed under Rule 10 based on Respondent's

admitted addiction to alcohol and drugs.[1] The Bar timely responded to the order and no response was filed by Respondent. On October 6, 2014, this Court entered an Order of Immediate Suspension and determined that the matter would proceed under Rule 6 rather than Rule 10.

¶4 The Bar cited repeated instances in which Respondent did not timely respond to the grievances filed against him. As a result of Respondent's failure to fully participate in the disciplinary proceedings, the Bar's motions to Deem Allegations Admitted filed August 12, 2014, and December 8, 2014, were stipulated by agreement and sustained by the PRT. A hearing was held before the PRT primarily as to mitigation of discipline.

## STANDARD OF REVIEW

¶5 "This Court has original and exclusive jurisdiction over all matters having to do with the admission or discipline of persons admitted to the practice of law in Oklahoma." *State ex rel. Okla. Bar Ass'n v. Allford*, 2006 OK 85, ¶2, 152 P.3d 190, 191. "Our review of the record is de novo in which we conduct a non-deferential, full-scale examination of all relevant facts; the recommendations of the Trial Panel are not binding on us, but are merely advisory." *State ex rel. Okla. Bar Ass'n v. Wilburn*, 2006 OK 50, ¶4, 142 P.3d 420, 422.

¶6 This Court has a "nondelegable responsibility" to determine whether a violation of the rules has occurred and determine the appropriate level of discipline. *Id.*, ¶3, 142 P.3d at 422. "To discharge this responsibility, we must re-examine the record and assess the weight and credibility of the evidence to determine whether the attorney's misconduct is established by clear and convincing evidence. If it is, we must impose the appropriate discipline." *Allford*, 2006 OK 85, ¶3, 152 P.3d at 191 (citation omitted).

## ANALYSIS

¶7 The trial panel found specifically that Respondent:

1. Accepted retainer fees and performed limited or no work.

2. Failed to account for the used portion of clients' retainer fees.

3. Failed to refund all or any portion of unearned fees.

4. Failed to properly maintain an attorney trust account.

5. Used funds for his personal use from his trust account.

6. Failed to communicate timely and effectively, if at all, with clients.

7. Failed to respond to grievances filed against him by former clients.

8. Lied to clients regarding his progress on and intentions with regard to their legal matters.

9. Lied, or at the least was deceptive with the Bar Association in regards to his whereabouts, absence, and treatment.

10. Refused to cooperate fully with the Bar Association with regard to the various investigations including failing to disclose issues and locations regarding his treatment, failing to appear under subpoena for the conclusion of his records deposition, and failing to allow the Bar Association access to his in-patient treatment records.

---

1. Rule 10.2 of the RGDP provides: "Whenever it has been determined that a lawyer is personally incapable of practicing law, his license to practice shall be suspended until reinstated by order of this Court." Rule 10.1 defines incapacity to include:

  (a) Suffering from mental or physical illness of such character as to render the person afflicted incapable of managing himself, his affairs or the affairs of others with the integrity and competence requisite for the proper practice of law.

  (b) Active malfeasance or repeated neglect of duty in respect to the affairs of a client, whether in matters pending before a tribunal or in other matters constituting the practice of law; or

  (c) Habitual use of alcoholic beverages or liquids of any alcoholic content, hallucinogens, sedatives, drugs, or other mentally or physically disabling substances of any character whatsoever to any extent which impairs or tends to impair ability to conduct efficiently and properly the affairs undertaken for a client in the practice of law.

## Count 1

¶ 8 The Cody Wood Grievance was filed with the Bar on February 7, 2013. Mr. Wood hired Respondent in April of 2010 to pursue a modification of child custody. He paid Respondent $3,000.00. Respondent failed to file any documents on Mr. Wood's behalf. Subsequently, Mr. Wood terminated Respondent's employment via email on October 14, 2010, after learning about allegations of drug abuse issues. On November 24, 2010, Mr. Wood's mother picked up a check for $1,200.00 from Respondent for the un-used portion of the retainer. That check was initially rejected due to insufficient funds. At her visit, Mr. Wood's mother also dropped off a letter from Mr. Wood requesting return of all documents and an accounting of the used portion of the retainer funds. Mr. Wood testified in front of the PRT that he never received an accounting of how the retainer funds were used and that he was never given any documents to review regarding his case. This conduct violated Rules 1.3, 1.4, 1.5, 1.15, 1.16(c), and 8.1(b) of the ORPC[2] and Rules 1.3 and 5.2 of the RGDP.[3]

2. Rule 1.3 requires that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

Rule 1.4 provides:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Rule 1.5 provides:

(a) A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery, showing the remittance to the client and the method of determination.

(d) A lawyer shall not enter into an arrangement for, charge, or collect:

(1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or

(2) a contingent fee for representing a defendant in a criminal case.

(e) A division of a fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;

(2) the client agrees to the arrangement and the agreement is confirmed in writing; and

(3) the total fee is reasonable.

. Rule 1.15 provides:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account but only in an amount necessary for that purpose.

(c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(e) When in connection with a representation, a lawyer possesses funds or other property in which both the lawyer and another person claim interests, the funds or other property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved, and the undisputed portion of the funds shall be promptly distributed.

(f) Where funds or other items of property entrusted to a lawyer have been impressed with a specific purpose as to their use, they shall retain that specific character unless otherwise authorized by a client or third person or prohibited by law. Where funds are impressed with a specific purpose, a lawyer may not subject them to a counterclaim, set off for fees, or subject them to a lien.

(g) Effective January 1, 2009, all members of the Bar who are required under the Oklahoma Rules of Professional Conduct, to maintain a trust account for the deposit of clients' funds entrusted to said lawyer, shall do so and furnish information regarding said account(s) as hereinafter provided. Each member of the Bar shall provide the Oklahoma Bar Association with the name of the bank or banks in which the lawyer carries any trust account, the name under which the account is carried and the account number. The lawyer or law firm shall provide such information within thirty (30) days from the date that said account is opened, closed, changed, or

modified. The Oklahoma Bar Association will provide on-line access and/or paper forms for members to comply with these reporting requirements. Provision will be made for a response by lawyers who do not maintain a trust account and the reason for not maintaining said account. Information received by the Association as a result of this inquiry shall remain confidential except as provided by the Rules Governing Disciplinary Proceedings. Failure of any lawyer to respond giving the information requested by the Oklahoma Bar Association, Oklahoma Bar Foundation or the Office of the General Counsel of the Oklahoma Bar Association will be grounds for appropriate discipline.

(h) A lawyer or law firm that holds funds of clients or third parties in connection with a representation shall create and maintain an interest-bearing demand trust account and shall deposit therein all such funds to the extent permitted by applicable banking laws, that are nominal in amount or to be held for a short period of time in compliance with the following provisions:

(1) the account may be established with any bank or savings and loan association authorized by federal or state law to do business in Oklahoma and insured by the Federal Deposit Insurance Corporation;

(2) the rate of interest payable on the account shall not be less than the rate paid by the depository institution to regular, non-lawyer depositors. Higher rates offered by the institution to customers whose deposits exceed certain time or quantity minimums, such as those offered in the form of certificates of deposit, may be obtained by a lawyer or law firm so long as there is no impairment of the right to withdraw or transfer principal immediately (except as accounts generally may be subject to statutory notification requirements), even though interest may be sacrificed thereby;

(3) the depository institution shall be directed:

(i) to remit interest or dividends, as the case may be, on the average monthly balance in the account, at least quarterly, to the Oklahoma Bar Foundation, Inc. ("Foundation"); and

(ii) to transmit with each remittance to the Foundation a statement showing the name of the lawyer or the law firm for whom the remittance is sent, the account number, the period of time covered by the statement, the rate of interest applied and the average daily balance of the account;

(4) the lawyer or law firm shall not deposit funds belonging to the lawyer or law firm in the account, except that funds necessary to comply with the depository institution's minimum balance requirements for the maintenance of the account or funds needed to pay applicable fees and service charges may be deposited therein;

(5) in determining whether to use the interest-bearing account herein specified, the lawyer shall consider whether the funds to be invested could be utilized to provide a positive net re-

turn to the client, taking into consideration the following factors:

(i) the amount of interest that the funds would earn during the period they are expected to be deposited;

(ii) the cost of establishing and administering the account, including the cost of the lawyer's services and the cost of preparing any tax reports required for interest accruing to a client's benefit; and

(iii) the capability of financial institutions to calculate and pay interest to individual clients;

(6) in the event that any client asserts a claim against a lawyer based upon such lawyer's determination to place client advances in the account because such balance is nominal in amount or to be held for a short period of time, the Foundation shall, upon written request by such lawyer, review such claim and either:

(i) approve such claim (if such balances are found not to be nominal in amount or short in duration) and remit directly to the claimant any sum of interest remitted to the Foundation on account of such funds; or

(ii) reject such a claim (if such balances are found to be nominal in amount or short in duration) and advise the claimant in writing of the grounds therefor. In the event of any subsequent litigation involving such a claim, the Foundation shall interplead any such sum of interest and shall assume the defense of the action;

(7) The requirements of subparagraph (h) shall not apply if:

(i) it is not feasible for the lawyer or law firm to establish an interest-bearing trust account for reasons beyond the control of the lawyer or law firm, such as the unavailability of a financial institution which offers such an account in the community where the principal office of the lawyer or law firm is situated, or

(ii) those financial institutions which offer such an account in the community where the principal office of the lawyer or law firm is situated impose fees and service charges that routinely exceed the interest generated by the account; and

(8) Information necessary to determine compliance or justifiable reason for noncompliance with the requirements of subparagraph (h) shall be included in the reporting required by subparagraph (g) of this rule. If it appears that a lawyer or law firm has not complied where it is feasible to do so, the matter may be referred to the office of the General Counsel of the Oklahoma Bar Association for appropriate investigation and proceedings.

(i) When a lawyer receives fund subject to this rule that are not required to be deposited in an interest bearing account payable to the Oklahoma Bar Foundation pursuant to (h), the lawyer may create and maintain either an interest bearing or a noninterest bearing account, provided that any interest earned by the funds belongs to the client, shall be distributed according to the client's instructions, and shall not be used by the lawyer for any purpose without the client's express consent.

(j) Beginning January 1, 2008 and in addition to the requirements previously set forth in this Rule, lawyers trust accounts shall be maintained only in financial institutions approved by the Office of the General Counsel. The Office shall establish rules governing approval and termination of approved status for financial institutions, and shall annually publish a list of approved financial institutions.

(k) A financial institution may be approved as a depository for lawyer trust accounts if it files with the Office of the General Counsel an agreement, a Trust Account Overdraft Reporting Agreement (TAORA) form provided by the Office, to report to the Office in the event any properly payable instrument is presented against a lawyer trust account containing insufficient funds, irrespective of whether or not the instrument is honored. No trust account shall be maintained in any financial institution which does not agree to make such reports. Any such agreement shall apply to all branches of the financial institution and shall not be cancelled except upon thirty (30) days notice in writing to the Office.

(l) The Trust Account Overdraft Reporting Agreement shall provide that all reports made by the financial institution shall be in the following format:

(1) In the case of a dishonored instrument, the report shall be identical to the overdraft notice customarily forwarded to the depositor, and should include a copy of the dishonored instrument, if such a copy is normally provided to depositors.

(2) In the case of instruments that are presented against insufficient funds but which instruments are honored, the report shall identify the financial institution, the lawyer or law firm, the account number, the date of presentation for payment and the date paid, as well as the amount of overdraft created thereby.

(3) Such reports shall be made simultaneously with, and within the time provided by law for notice of dishonor, if any. If an instrument presented against insufficient funds is honored, then the report shall be made within five (5) banking days of the date of presentation for payment against insufficient funds.

(m) Every lawyer practicing or admitted to practice in this jurisdiction shall be deemed to have consented to the reporting and production requirements mandated by this rule.

(n) Nothing herein shall preclude a financial institution from charging a particular lawyer or law firm for the reasonable cost of producing the reports and records required by this rule.

(o) Definitions

"Financial Institution"—includes banks, savings and loan associations, savings banks and any other business or person which accepts for deposit funds held in trust by lawyers.

"Properly payable"—refers to an instrument which, if presented in the normal course of business, is in a form requiring payment under the laws of this jurisdiction.

## Count 2

¶ 9 In November 2012, client Mark Durbin paid Respondent $2,700.00 to complete an ancillary probate and to resolve a title issue for Durbin's mother. Respondent did not place his client's money into a trust account. Instead, Respondent deposited the client's money into his firms's operating account, which at the time was overdrawn. In January 2013, Respondent prepared and mailed two documents to Mr. Durbin, who executed and immediately returned them to Respondent. Thereafter, Respondent failed to respond to any of Mr. Durbin's attempts to communicate. Respondent also failed to initiate any legal proceedings on behalf of Mr. Durbin. After Respondent failed to appear for a scheduled meeting on May 20, 2013, Durbin fired Respondent and requested a refund.

¶ 10 Respondent has admitted that he owed Mr. Durbin a refund but lacked the funds to do so. Ultimately, Mr. Durbin paid $2,500.00 to another lawyer to perform the work which Respondent had been hired to complete. Additionally, Respondent failed repeatedly to timely respond to the Bar's requests for a response to the Durbin grievance. It was only after an investigator for the Bar traveled to Respondent's office in Idabel, Oklahoma, that Respondent provided a full and fair response. This conduct violated Rules 1.1,[4] 1.3, 1.4, 1.5, 1.15, 1.16(c), and 8.1(b) of the ORPC and Rules 1.3 and 5.2 of the RGDP.

## Count 3

¶ 11 Ronald Rolen paid Respondent $2,500.00 on April 28, 2010, to retain his services to obtain his ex-wife's signature and file a custody modification agreement. The agreement was never filed changing custody

"Notice of dishonor"—refers to the notice, which a financial institution is required to give, under the laws of this jurisdiction, upon presentation of an instrument, which the institution dishonors.

Rule 1.16(c) provides: "A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation."

Rule 8.1 provides:
An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
1. (a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

3. Rule 1.3 provides:
The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.
Rule 5.2 provides:

After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete' or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action.

4. Rule 1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

and Respondent failed to appear at a subsequent child support hearing. Mr. Rolen learned that Respondent entered substance abuse treatment shortly after Mr. Rolen retained his services. Respondent admitted a refund was due Mr. Rolen, but the refund remains unpaid. The conduct violated Rules 1.3, 1.4, 1.5, 1.15; 1.16(c), and 8.1(b) of the ORPC and Rules 1.3 and 5.2 of the RGDP.

## Count 4

¶12 Audrey Kessler paid Respondent $2,000.00 on September 5, 2013, to retain his services to process a deed approval for one acre of land from a pending estate. In the weeks prior to receipt of the funds, Respondent made almost daily phone calls to Ms. Kessler inquiring about her decision to move forward with the deed and pay a retainer. Ms. Kessler made multiple attempts to communicate with Respondent after the retainer was paid, but the deed was never provided for review or filed. After advising Respondent's secretary that she no longer wished to use Respondent's services on October 28, 2013, she was never able to obtain copies of her file or return of her retainer. Respondent failed to respond to Ms. Kessler's grievance filed March 14, 2014. Respondent's conduct violated Rules 1.3, 1.4, 1.5, 1.15, 1.16(d), and 8.1(b) of the ORPC and Rules 1.3 and 5.2 of the RGDP.

## Count 5

¶13 Dale Shafer paid Respondent $1,000.00 on September 25, 2013, to retain his services to modify child support. Respondent failed to present Mr. Shafer with any documents, file any pleadings, return his phone calls, or refund any of the retainer. Mr. Shafer ultimately obtained assistance by applying directly to the Oklahoma Department of Human Services. As a result, Mr. Shafer paid an additional six months of child support at the rate of $275.00 per month. Respondent did not respond to the grievance filed on February 18, 2014. This conduct

violated Rules 1.3, 1.4, 1.5, 1.15, 1.16(d), and 8.1(b) of the ORPC and Rules 1.3 and 5.2 of the RGDP.

## Count 6

¶14 On May 30, 2013, Phyllis Williams paid Respondent $2,000.00 to evict a tenant residing in her cousin's home and secure the correction of a quit claim deed inappropriately filed on her cousin, Richard Setzer's property. On several occasions, Respondent advised that hearings were scheduled but they never transpired. He would not return their phone calls. A petition has never been filed and the quit claim deed has never been corrected. No refund of the retainer has been made. In addition, Respondent failed to respond to the grievance. This conduct violated Rule 5.2 of the RGDP.

## Count 7

¶15 Joshua Reed paid Respondent $2,500.00 on February 25, 2014, to obtain custody of his daughter. Respondent advised Mr. Reed to keep his daughter from her mother until the scheduled emergency hearing. Mr. Reed appeared at the emergency hearing and the case was never called because it had not been filed. As a result, Mr. Reed's daughter was taken away by the Sheriff as the daughter's mother had filed a protective order against Mr. Reed. Respondent did not return the retainer or file a response to the grievance filed on May 22, 2014. This conduct violated Rules 1.3, 1.4, 1.5, 1.15, 1.16(d),[5] and 8.1(b) of the ORPC and Rules 1.3 and 5.2 of the RGDP.

## Count 8

¶16 Mary Wilson paid Respondent $2,250.00 on April 14, 2014, to retain his services. She states that no work was performed on her case and that Respondent would not return her phone calls or the retainer. Respondent did not respond to the grievance filed on May 15, 2014. This con-

---

5. Rule 1.6(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expenses that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

duct violated Rule 8.1(b) of the ORPC and Rule 5.2 of the RGDP.

### Count 9

¶ 17 Two grievances brought by the Bar involve a pattern of misuse of Respondent's trust account including writing checks for personal use and allowing the account to become repeatedly overdrawn. Additionally, Respondent mismanaged client funds by depositing client trust funds into his operating account. Respondent failed to respond timely to these grievances. Further, he failed to appear at the continuation of the deposition for review of his subpoenaed bank records. This conduct violated Rules 1.5, 1.15, 3.4(c),[6] and 8.1(b) of the ORPC and Rules 1.4 and 5.2 of the RGDP.

### Count 10

¶ 18 George Fields paid Respondent $600.00 as a deposit to retain his services to obtain a modification of child support and visitation with his children. Respondent never filed anything with the court and has not refunded the deposit. Respondent represented that he was waiting for the court to set a date. Respondent failed to respond to the grievance filed on June 16, 2014. This conduct violated Rule 8.1(b) of the ORPC and Rule 5.2 of the RGDP.

### Count 11

¶ 19 Florence Hutto paid Respondent $1,500.00 between March 14, 2014, and May 9, 2014, to retain his services to regain custody of her daughter by terminating a guardianship. Despite several text messages between Ms. Hutto and Respondent nothing was ever filed and her retainer was not returned. Respondent failed to respond to the grievance filed on August 14, 2014. This conduct violated Rules 1.3, 1.4, 1.5, and 8.1(b) of the ORPC and Rules 1.3 and 5.2 of the RGDP.

### Count 12

¶ 20 Between April 10 and June 13, 2014, Respondent was paid $4,750.00 from the account of Kaye Whittington's ward to prepare a last will and testament, a joint tenancy deed, and a power of attorney in favor of the ward's boyfriend whom Whittington believed was taking advantage of the ward. Ms. Whittington's grievance was filed after Respondent cashed a check from the ward's account after being specifically informed by the court that all persons were enjoined from withdrawing funds from the ward's account. Further, Respondent prepared estate documents for the ward after he received a copy of the petition for guardianship and the psychiatrist's report regarding her competence.

¶ 21 Three days after Respondent cashed the check on the ward's account, he was suspended from the practice of law for failure to maintain dues and continuing legal education credits. Because Respondent could no longer perform any legal duties, Ms. Whittington attempted unsuccessfully on several occasions to obtain a refund of the balance of the retainer. Respondent failed to

**6.** Rule 3.4(c) provides:

A lawyer shall not:

1. (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;

(b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;

(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party;

(e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused; or

(f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless:

(1) the person is a relative or an employee or other agent of a client; and

(2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

respond to the grievance filed on October 16, 2014. This conduct violated Rules 1.14,[7] 3.4(c), 5.4, and 8.4 of the ORPC and Rules 1.3 and 5.2 of the RGDP.

## APPROPRIATE DISCIPLINE

¶ 22 Respondent admits addiction to methamphetamine and alcohol. After disciplinary proceedings began, he sought and obtained treatment. He asserts he is currently sober and that he should be allowed to continue practicing law under probation in order to generate income to pay back the clients whom he owes retainer fees.

¶ 23 Respondent's addiction becomes relevant to disciplinary proceedings in two regards. First, it is relevant in a Rule 10 proceeding. "A Rule 10 proceeding allows for consideration of any conduct that may have resulted from the lawyer's incapacity." *Okla. Bar Ass'n v. Donnelly*, 1992 OK 164, ¶ 16, 848 P.2d 543, 547. The focus of a Rule 10 proceeding is a respondent's current incapacity to practice law for medical or psychological reasons. *Id.* The incapacity, however, is not a shield from professional responsibility. *Id.*

¶ 24 Second, a respondent's addiction to alcohol or drugs may be a mitigating factor in a Rule 6 proceeding. While addiction is not by itself enough to mitigate discipline, a lawyer who recognizes his or her affliction, seeks treatment before disciplinary proceedings are brought, cooperates in treatment, and is willing to be supervised, may warrant less harsh discipline.[8]

¶ 25 In this matter, Rule 10 does not apply because there is no allegation that Respondent was *currently* incapable of practicing law. This Court is left with the question of the proper discipline to be imposed for Respondent's past conduct which is the proper focus of a Rule 6 proceeding. *See Id.* ¶ 15, 848 P.2d at 547. Further, Respondent has foreclosed the possibility of proceeding under Rule 10 due to his unwillingness to fully disclose the content of his medical records to the Bar.[9] That refusal has deprived the Bar of the ability to prove incapacity by clear and convincing evidence as required by the RGDP.

¶ 26 The Bar has established by clear and convincing evidence that Respondent has committed serious violations of the ORPC and the RGDP which have resulted in grave economic harm to multiple clients and brought disrepute to the profession. The evidence demonstrates that several clients are owed an accounting and the return of all

---

7. Rule 1.14 provides:

(a) When a client's capacity to make adequately considered decisions in connection with a representation is diminished, whether because of minority, mental impairment or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.

(b) When the lawyer reasonably believes that the client has diminished capacity, is at risk of substantial physical, financial or other harm unless action is taken and cannot adequately act in the client's own interest, the lawyer may take reasonably necessary protective action, including consulting with individuals or entities that have the ability to take action to protect the client and, in appropriate cases, seeking the appointment of a guardian ad litem, conservator or guardian.

(c) Information relating to the representation of a client with diminished capacity is protected by Rule 1.6. When taking protective action pursuant to paragraph (b), the lawyer is impliedly authorized under Rule 1.6(a) to reveal information about the client, but only to the extent reasonably necessary to protect the client's interests.

8. The *Donnelly* court considered the respondent's alcoholism as a mitigating factor because:

Donnelly recognized he had a problem, sought treatment, and informed his client of his misconduct. He did this on his own, before disciplinary proceedings were brought against him. This conduct is different from that of a lawyer who seeks treatment *after* disciplinary proceedings have been instituted against him. It is doubtful that Donnelly's alcoholism alone would be considered a mitigating factor if he had not recognized his problem and sought treatment. Allowing Donnelly to use his affliction as mitigation in these circumstances affords an incentive for other lawyers to seek help before misconduct arises or progresses to a more serious stage. *Id.*, ¶ 20, 848 P.2d at 549.

9. For example, in a letter to the Bar from a treatment facility in California, his case manager stated: "Mr. Leonard declined the release of any medical/clinical records because he stated 'Nobody needs to know the intimate details of my life ...' "

or a part of the money they paid as a retainer. The record is devoid of evidence of efforts to remedy that situation. This Court notes that an affidavit of compliance with Rule 9 following Respondent's interim suspension has not been filed.[10]

¶ 27 This Court is mindful of the testimony of Respondent's AA sponsor and his counselor concerning Respondent's sincere and effective efforts to maintain sobriety. However, those efforts do not make the serious misconduct and substantial harm to clients simply go away. Respondent's argument for a period of probation while he maintains a law practice is unsupported by any citation of

authority and there exists no such authority to support that position. This Court holds that disbarment is the only sanction adequate to protect the public from Respondent's continued practice and to warn other lawyers of the consequences of serious misconduct involving client funds.

¶ 28 Respondent is hereby disbarred effective October 6, 2014, the date of Respondent's interim suspension. He is ordered to pay the costs of these proceedings in the amount of $9,561.71 within ninety days from the date this opinion becomes final. Further, it shall be a condition of reinstatement [11] that

10. Upon respondent's interim suspension on October 6, 2014, Rule 9 required the filing of an affidavit with the Professional Responsibility Commission and this Court, within twenty days, demonstrating that the lawyer has notified his clients of the suspension and withdrawn from representation. Rule 9.1 provides:

When the action of the Supreme Court becomes final, a lawyer who is disbarred or suspended, or who has resigned membership pending disciplinary proceedings, must notify all of the lawyer's clients having legal business then pending within twenty (20) days, by certified mail, of the lawyer's inability to represent them and the necessity for promptly retaining new counsel. If such lawyer is a member of, or associated with, a law firm or professional corporation, such notice shall be given to all clients of the firm or professional corporation, which have legal business then pending with respect to which the disbarred, suspended or resigned lawyer had substantial responsibility. The lawyer shall also file a formal withdrawal as counsel in all cases pending in any tribunal. The lawyer must file, within twenty (20) days, an affidavit with the Commission and with the Clerk of the Supreme Court stating that the lawyer has complied with the provisions of this Rule, together with a list of the clients so notified and a list of all other State and Federal courts and administrative agencies before which the lawyer is admitted to practice. Proof of substantial compliance by the lawyer with this Rule 9.1 shall be a condition precedent to any petition for reinstatement.

11. Rule 11.1 provides:

A person whose name has been stricken from the Roll of Attorneys for non-payment of dues, or who has been suspended from the practice of law for a period of longer than two (2) years or disbarred, or who has resigned membership in the Association, may be readmitted to the practice of law only through the following procedures:

(a) The applicant shall file an original and ten copies of a petition for reinstatement with the Clerk of the Supreme Court, and

attach thereto (1) an affidavit showing all of the applicant's activities since the termination or suspension of his right to practice law and the applicant's place or places of residence since that date; and (2) the applicant's affidavit and the affidavits of the court clerks in the several counties in which he has resided, establishing that the applicant has not practiced law in their respective courts since the termination or suspension of his right to practice law. The applicant shall concurrently furnish a copy of said petition and all other documents filed with the Clerk of the Supreme Court to the General Counsel of the Oklahoma Bar Association.

(b) If any funds of the Client's Security Fund of the Oklahoma Bar Association have been expended on behalf of the applicant, the applicant must show the amount paid and that the same has been repaid to the Oklahoma Bar Association to reimburse such Fund.

(c) The applicant shall pay a fee to cover the expenses of investigating and processing the application as determined by the Professional Responsibility Tribunal. In addition, the applicant shall pay the cost of the original and one copy of the transcript of any hearings held in connection with the application.

(d) The applicant shall, if required by the Professional Responsibility Tribunal, procure at the applicant's expense and cause to be filed any report required by the Professional Responsibility Tribunal of the applicant's activities during any time after termination or suspension that the applicant has resided outside the state.

(e) The applicant shall not be permitted to file an application for reinstatement, after disbarment or resignation pending investigation or disciplinary proceedings, within five (5) years of the effective date of the order of the Court disbarring the applicant or accepting the resignation, nor shall any applicant be permitted to file an application for reinstatement within one (1) year after the Supreme Court has denied an earlier application.

Respondent refund any unearned fees owed to any client or reimburse the Client Security Fund if restitution has been made on his behalf. Finally, compliance with Rule 9 shall be a condition of reinstatement.

ALL JUSTICES CONCUR.