Wyrick, J.:
 

 ¶ 1 In response to grievances from three of his clients, Tanya Adams, Anna Harjo, and Shelly McCarroll, the Oklahoma Bar Association (the Bar) brought a formal complaint against Respondent, Joel Lawrence Kruger, in which it alleges four counts of professional misconduct. Counts 1, 2, and 3 relate to his representation of these women; count 4 is for bringing a retaliatory lawsuit against one of
 
 *309
 
 them. Following a lengthy trial, the PRT found that Kruger had committed professional misconduct in three of the four counts, including numerous violations of the Oklahoma Rules of Professional Conduct. The PRT further found that Kruger's deceptive and dilatory behavior during the disciplinary proceedings constituted professional misconduct. The PRT ultimately recommended that Kruger be disbarred for his actions and ordered to pay the costs of these proceedings. We reach the same conclusion.
 

 I
 

 ¶ 2 This Court is responsible for regulating the practice of law in our state.
 
 [2]
 
 This responsibility comes with the power both to establish rules of professional conduct for practitioners and to discipline those practitioners that violate those rules.
 
 [3]
 
 These powers are exclusive to this Court and, as such, our review in disciplinary proceedings is
 
 de novo
 
 -without deference to either the stipulations of the parties or the findings, conclusions, and recommendations of the PRT.
 
 [4]
 
 To impose discipline, we must find clear and convincing evidence of misconduct.
 
 [5]
 
 Based on our review of this record, we find that such evidence exists.
 

 A. Count 1: Tanya Adams
 

 ¶ 3 Tanya Adams hired Kruger's firm, Kruger & Associates, P.C., in 2004 to collect child-support arrearages from her ex-husband. In exchange for the firm's services, Adams agreed to allow the firm to retain 38% of the collected arrearages. Ms. Adams's case was initially the responsibility of two associates within Kruger's firm, and while her case was primarily in the hands of those associates, Ms. Adams received regular monthly payments. In 2014, however-after those associates had left the firm and Kruger assumed responsibility for collecting and remitting Adams's share of the arrearages-payments to Adams became sporadic and unpredictable, despite the regular flow of payments from Adams's ex-husband.
 

 ¶ 4 Adams attempted to confront Kruger about these missing payments by mail, telephone, and email, but was largely unsuccessful. When Kruger did communicate with Adams, he would inform her that he would "look into" the matter and, on occasion, would even remit a payment. But, invariably, communication would break down thereafter and payments would again lapse. Ultimately, on November 16, 2014, Adams sent a certified letter to Kruger requesting that he either send her the money she was owed or withdraw from representing her in the matter. Kruger did not respond; so Adams was forced to file a grievance with the OBA on December 15, 2014.
 

 ¶ 5 In total, the record demonstrates that Kruger withheld approximately $3,000 of Ms. Adams's share of the child-support payments. The record also clearly demonstrates that those payments were deposited in the client trust account, and then withdrawn from the trust account for purposes other than Ms. Adams's benefit.
 

 *310
 
 ¶ 6 Over the course of his representation of Ms. Adams, Kruger failed to diligently and promptly handle his client's matters, failed to communicate and respond to the client's requests for information, and failed to safeguard his client's funds to such an extent as to constitute a misappropriation of those funds. We therefore conclude that Kruger violated Rules 1.3,
 
 [6]
 
 1.4,
 
 [7]
 
 and 1.15
 
 [8]
 
 of the Oklahoma Rules of Professional Conduct.
 

 B. Count 2: Anna Harjo
 

 ¶ 7 Anna Harjo's experience with Kruger resembles that of Ms. Adams. Ms. Harjo hired Kruger's firm in 2004 to collect past-due child support, and she agreed to a 38% contingency fee for collected arrearages. Ms. Harjo's case was initially the responsibility of the same two associates within Kruger's firm, and while those associates handled her representation, Ms. Harjo received regular payments. Once those associates left the firm and Kruger began managing her case, communication broke down and payments stopped.
 

 ¶ 8 But then on October 25, 2013, Kruger texted Ms. Harjo about the possibility of settling her case. The two then met the following January, at which time Ms. Harjo rejected the settlement offer Kruger had suggested, explained that she would not accept anything less that the full amount owed, and requested that Kruger supply her with a complete copy of her file. Communication ceased again following that meeting, and Ms. Harjo was never given a copy of her file, despite numerous attempts to contact Kruger. Ms. Harjo ultimately filed her grievance on June 19, 2015.
 

 ¶ 9 During its investigation, the Bar uncovered that Kruger had settled Ms. Harjo's case about a week after their January meeting. When the Bar told this to Ms. Harjo, it was the first time she had heard of it. In total, Kruger had accepted $28,000 in settlement of Ms. Harjo's claim, yet remitted none of it to his client. Kruger's explanation is that all $28,000 is owed to him in attorney's fees-despite the fact that his firm had already been retaining 38% of every child-support payment collected on Ms. Harjo's behalf. The record is unclear as to just how much of this money is owed to Ms. Harjo-it's somewhere between $12,000 and $19,000, and much of the difficulty is due to Kruger's incoherent recordkeeping-but it is quite clear that she is owed. It is also clear, just as it was in Ms. Adams's case, that most if not all of Ms. Harjo's money has already been spent.
 

 ¶ 10 Over the course of his representation of Ms. Harjo, Kruger failed to diligently and promptly handle his client's matters, failed to communicate and respond to the client's requests for information, failed to adequately safeguard his client's funds to such an extent as to constitute a misappropriation of those funds, and charged a grossly unreasonable fee for his services. We therefore conclude that Kruger violated Rules 1.3,
 
 [9]
 
 1.4,
 
 [10]
 
 1.5,
 
 [11]
 
 and 1.15
 
 [12]
 
 of the Oklahoma Rules of Professional Conduct.
 

 C. Counts 3 & 4: Shelly McCarroll
 

 ¶ 11 Around May of 2012, Kruger and Shelly McCarroll entered into, what would prove to be, a highly dysfunctional romance. A few months later, in August of 2012, Ms. McCarroll was involved in a car accident. That same month, Kruger began to keep a "ledger," in which he would record every charge he claimed to incur on Ms. McCarroll's behalf-everything from medical bills to energy drinks, cigarettes, and cat food. Then in September, Kruger had Ms. McCarroll execute three agreements with him:
 

 (1) An "Assignment of Proceeds from Personal Injury Recovery" that would allow Kruger to collect the amount reflected in his "ledger" out of any recovery Ms.
 
 *311
 
 McCarroll obtained in connection with the August car accident;
 
 [13]
 

 (2) An "Agreement for Legal Services-PI" that allowed Kruger to collect a 38% contingency fee in exchange for his representation in the car-accident matter;
 
 [14]
 
 and
 

 (3) Another "Agreement for Legal Services" that allowed Kruger to charge $225 per hour to represent Ms. McCarroll in "several matters pending, including, but not necessarily limited to, COBRA, Unemployment Compensation, Automobile Collision Personal Injury (on a contingency fee arrangement), and any other matter that the parties agree that Attorney will handle."
 
 [15]
 

 Ms. McCarroll was not provided with copies of these agreements.
 

 ¶ 12 Almost two years later, in June of 2014, Kruger collected a $50,000 check in settlement of Ms. McCarroll's personal injury claims arising out of the 2012 accident. Of that $50,000, approximately $3,800 went to various third parties, either at Ms. McCarroll's direction or on her behalf, and $1,700 went to Ms. McCarroll herself. The rest of the money-some $44,000-went to Kruger, and by the end of that year, that money had been spent. Nevertheless, Kruger maintains that Ms. McCarroll still owes him in excess of $100,000.
 

 ¶ 13 By summer of the following year, the personal relationship between Kruger and Ms. McCarroll had permanently soured and, as with the other two complainants in this case, the channels of communication between lawyer and client had shut down. Ms. McCarroll requested an accounting and other information and documents pertaining to her case, and Kruger refused to comply. Thus, in August of 2015, Ms. McCarroll filed her grievance with the Bar.
 

 ¶ 14 In April of the following year, Ms. McCarroll also filed a lawsuit against Kruger, raising many of the same problems with his representation as she did in her bar grievance. Kruger responded with a lawsuit of his own in the following June.
 

 ¶ 15 Over the course of his representation of Ms. McCarroll, Kruger failed to communicate and respond to the client's requests for information, charged a grossly unreasonable fee for his services, provided financial assistance to a client in connection with contemplated litigation in excess of court costs, acquired a proprietary interest in the subject matter of that contemplated litigation beyond that required to secure his authorized fee in the case, and failed to safeguard his client's funds to such an extent as to constitute a misappropriation of those funds. We therefore conclude that Kruger violated Rules 1.4,
 
 [16]
 
 1.5,
 
 [17]
 
 1.8(e) and (i),
 
 [18]
 
 and 1.15
 
 [19]
 
 of the Oklahoma Rules of Professional Conduct. We also agree with the PRT's conclusion, however, that the record
 
 does not
 
 establish that Kruger's lawsuit against Ms. McCarroll was filed in violation of the Rules of Professional Conduct or the Rules Governing Disciplinary Proceedings. While the merit of, and impetus for, that suit appear dubious, we find that it is not clearly retaliatory based on this record.
 

 II
 

 ¶ 16 This Court has also warned that an Attorney's conduct during the course of the disciplinary process can be cause for discipline in itself.
 
 [20]
 
 This record gives us ample reason to reiterate that warning.
 

 A. Conduct in Response to Complaints
 

 ¶ 17 Ms. Adams filed her grievance against Kruger on December 15, 2014. The Bar then sent a letter to Kruger on January
 
 *312
 
 5, 2015, advising him that an informal investigation had been opened in response to the grievance and requesting that he respond within the next two weeks. Kruger did not respond. The Bar then sent him another letter on February 20, 2015, requesting a response by March 6. Kruger did not respond. The Bar then sent him a third letter on April 9, 2015, advising him that a formal investigation had been opened in the matter and that, by Rule 5.2 of the Rules Governing Disciplinary Proceedings, Kruger was to respond within 20 days. Kruger did not respond. On May 7, 2015, the Bar then sent him a fourth letter, this time by certified mail, giving him another five days to respond. Kruger did not respond, and on June 15, 2015, that certified letter was returned as "unclaimed."
 

 ¶ 18 Ms. Harjo filed her grievance on June 19, 2015. The Bar then sent a letter to Kruger on June 23, 2015, advising him that an informal investigation had been opened in response to the grievance and requesting that he respond within the next two weeks. Kruger did not respond. The Bar then sent him another letter on September 1, 2015, advising him that a formal investigation had been opened in the matter and that, by Rule 5.2 of the Rules Governing Disciplinary Proceedings, Kruger was to respond within 20 days. Kruger did not respond. On September 28, 2015, the Bar then sent him a third letter, this time by certified mail, giving him another five days to respond. Kruger did not respond, and on November 23, 2015, that certified letter was returned as "unclaimed."
 

 ¶ 19 Ms. McCarroll filed her grievance on August 19, 2015. The Bar then sent a letter to Kruger on September 3, 2015, advising him that a formal investigation had been opened in the matter and that, by Rule 5.2 of the Rules Governing Disciplinary Proceedings, Kruger was to respond within 20 days. Kruger did not respond. On September 29, 2015, the Bar sent him another letter, this time by certified mail, giving him another five days to respond. Kruger did not respond, and on November 23, 2015, that certified letter was returned as "unclaimed."
 

 ¶ 20 The Bar then changed its tactics and issued a subpoena compelling Kruger to appear for a deposition and to bring his client's files with him. The deposition was set for 9:30 a.m. on January 14, 2016. Kruger did not appear on time, but he did meet with the Bar that afternoon and brought some documents with him. He did not, however, provide a written response to any of the grievances. During that meeting, the two sides discussed the serious nature of these grievances and the Bar's need for a more fulsome explanation of Kruger's behavior. The Bar described the documentation it needed in order to evaluate Kruger's case and, together, they agreed upon a date by which Kruger would produce those documents (January 28, 2016) and a new time at which he would appear for his formal deposition (February 29, 2016). The Bar then issued a second subpoena to that effect. The January 28 deadline then came and went without Kruger producing the documents requested; so, on February 8, the Bar sent him another letter to remind him of his obligation to appear for deposition on the 29th. February 29 then came and went; Kruger never showed up.
 

 ¶ 21 On March 9, however, the Bar finally received Kruger's written response to Ms. McCarroll's grievance. Then, on April 6 and May 19, respectively, the Bar received written responses to Ms. Adams's and Ms. Harjo's grievances. In total-from the date the Bar mailed its first letters to the time he sent his responses-it took Kruger more than 6 months to respond to Ms. McCarroll's complaint, over 10 months to respond to Ms. Harjo's complaint, and well over a year to respond to Ms. Adams's complaint.
 

 ¶ 22 And what Kruger gave the Bar in response to its investigation was far from acceptable. He failed to provide answers to crucial allegations (like why he settled Ms. Harjo's case without her permission), provided responses that were patently untrue (like that Ms. Adams had in fact been
 
 overpaid
 
 ), and provided information that was entirely irrelevant (like sordid details of his relationship with Ms. McCarroll). He also attempted to support his statements with piles of internal records that he knew were either unverifiable, duplicative, incomplete, or simply false.
 

 *313
 
 ¶ 23 This sort of behavior during a Bar investigation is unacceptable and clearly warrants discipline under Rule 5.2 of the Rules Governing Disciplinary Proceedings.
 
 [21]
 

 B. Conduct During the Trial Proceedings
 

 ¶ 24 Kruger's conduct did not improve once the case reached the PRT. This is how the PRT describes the experience:
 

 The case at bar is an extreme example of how the trial panel's effort to provide due process to a respondent provides fertile ground for a respondent inclined to mischief to abuse the process.
 

 ....
 

 ... [A]s is readily apparent in the 3083 page transcript, the Respondent routinely ignored deadlines and Orders all the while complaining that he wasn't being treated fairly. He was late to virtually every day of hearing. He falsified evidence. His disdain and contempt for the disciplinary process was palpable by his actions.
 

 Respondent's utter failure to recognize that the door of due process swings both ways is punctuated by his application to this Court for Extraordinary Relief complaining that the Presiding Master had concluded that Respondent would not be permitted to elicit the testimony of his expert witness because of his failure to comply with the most fundamental of multiple orders and clear statutory mandate requiring that documents upon which his expert relied be produced to the Complainant.
 

 Respondent's evolving defense as to Counts One and Two is that[,] to properly know whether he had accurately accounted to his clients[,] records going back to 2006 had to be considered (records he alternately claimed to not have but necessarily furnished to his expert). As the record became more and more confused because of Respondent's late production and manipulation of data, the Complainant asked leave to have yet another expert (in addition to the investigator for the Complainant) review and testify. Respondent agreed to this before he disagreed. ...
 

 The Trial Panel and the Presiding Master have been called upon throughout these proceedings to balance the need for an orderly proceeding and due process to all in accordance with fundamental rules of civil procedure as over and against the Respondent's seemingly endless quiver of obfuscatory tactics-all in the interest of providing an adequate record for this Court. It is the Byzantine abuse of the process by the Respondent which provides the clearest record in establishing the appropriate discipline in this matter.
 
 [22]
 

 We cannot agree more.
 
 [23]
 

 ¶ 25 But what is even more insulting than Kruger's lack of respect for this institution is his lack of respect for his clients, as evidenced by his utter failure to express remorse or acknowledge the gravity of his wrongdoing. For example, at one point in his testimony-after hearing days of evidence demonstrating his mishandling of thousands of dollars of his clients' money-Kruger said: "you know, we're talking about nickels and dimes really."
 
 [24]
 
 And at another point, in describing his work in representing Ms. McCarroll and her family, he stated: "So I should receive some kind of award from the Bar, I would think, like lawyer of-of the universe."
 
 [25]
 
 We find this irreverence particularly disturbing.
 

 ¶ 26 In light of this evidence, we conclude that Kruger breached his duty of candor owed to the tribunal, breached his duty to act fairly to the opposing party and counsel, and knowingly made false statements of fact in connection with a bar matter, thereby violating
 
 *314
 
 Rules 3.3,
 
 [26]
 
 3.4,
 
 [27]
 
 and 8.1
 
 [28]
 
 of the Oklahoma Rules of Professional Conduct.
 

 * * *
 

 ¶ 27 Based on the foregoing, it is clear that Kruger has committed professional misconduct as that term is defined in Rule 8.4 of the Rules of Professional Conduct.
 
 [29]
 
 It is also quite clear that the only appropriate response to Kruger's misconduct is to disbar him.
 
 [30]
 
 The possibility of Mr. Kruger continuing to practice law in our State poses too great a danger to its courts and to its people.
 

 ¶ 28 Respondent Joel Lawrence Kruger is therefore disbarred and, pursuant to Rule 6.16 of the Rules Governing Disciplinary Proceedings, ordered to pay the costs of this proceeding in the sum of $47,363.01. Respondent's motion for an evidentiary hearing on the matter is denied.
 

 Combs, C.J., Gurich, V.C.J., and Kauger, Winchester, Edmondson, Colbert, Wyrick, and Darby, JJ., concur.
 

 Reif, J., recused.
 

 [2]
 

 5 O.S.2011 § 13 ; RGDP Rule 1.1, 5 O.S.2011 ch. 1, app. 1-A.
 

 [3]
 

 5 O.S.2011 § 13 ; RGDP Rule 1.1, 5 O.S.2011 ch. 1, app. 1-A
 
 ;
 

 State ex rel. OBA v. Braswell
 
 ,
 
 1998 OK 49
 
 , ¶ 6,
 
 975 P.2d 401
 
 , 404 ;
 
 State ex rel. OBA v. Eakin
 
 ,
 
 1995 OK 106
 
 , ¶ 8,
 
 914 P.2d 644
 
 , 648 ;
 
 State ex rel. OBA v. Downing,
 

 1990 OK 102
 
 , ¶ 12,
 
 804 P.2d 1120
 
 , 1122-23 ;
 
 State ex rel. OBA v. Raskin
 
 ,
 
 1982 OK 39
 
 , ¶ 11,
 
 642 P.2d 262
 
 , 265-66.
 

 [4]
 

 State ex rel. OBA v. Boone
 
 ,
 
 2016 OK 13
 
 , ¶¶ 2-3,
 
 367 P.3d 509
 
 , 511 (citing
 
 State ex rel. OBA v. Conrady
 
 ,
 
 2012 OK 29
 
 , ¶ 6,
 
 275 P.3d 133
 
 , 136 ;
 
 State ex rel. OBA v. Wilcox
 
 ,
 
 2009 OK 81
 
 , ¶ 2,
 
 227 P.3d 642
 
 , 647 ;
 
 State ex rel. OBA v. Kinsey
 
 ,
 
 2009 OK 31
 
 , ¶ 12,
 
 212 P.3d 1186
 
 , 1192 ;
 
 State ex rel. OBA v. Taylor
 
 ,
 
 2003 OK 56
 
 , ¶ 2,
 
 71 P.3d 18
 
 , 21 ;
 
 State ex rel. OBA v. Todd
 
 ,
 
 1992 OK 81
 
 , ¶ 2,
 
 833 P.2d 260
 
 , 262 ). We also note that we are not bound by the specific rule violations listed in the complaint.
 
 See
 

 State ex rel. OBA v. Bedford
 
 ,
 
 1997 OK 83
 
 , ¶ 15,
 
 956 P.2d 148
 
 , 152 ("The Bar need only plead sufficient facts that will put the accused attorney on notice of the charges and give him an opportunity to respond to the facts alleged. RGDP Rule 6.2, which governs the contents of disciplinary complaints, requires only that the specific facts be set forth, and does not require the lawyer to be notified of the specific disciplinary rule that such conduct violates." (citations and internal quotation marks omitted) (quoting
 
 State ex rel. OBA v. Perry
 
 ,
 
 1997 OK 29
 
 , ¶ 16,
 
 936 P.2d 897
 
 , 900-01 ) ).
 

 [5]
 

 RGDP Rule 6.12(c), 5 O.S.2011 ch. 1, app. 1-A.
 

 [6]
 

 ORPC Rule 1.3, 5 O.S.2011 ch. 1, app. 3-A.
 

 [7]
 

 ORPC Rule 1.4, 5 O.S.2011 ch. 1, app. 3-A.
 

 [8]
 

 ORPC Rule 1.15, 5 O.S.2011 ch. 1, app. 3-A.
 

 [9]
 

 ORPC Rule 1.3, 5 O.S.2011 ch. 1, app. 3-A.
 

 [10]
 

 ORPC Rule 1.4, 5 O.S.2011 ch. 1, app. 3-A.
 

 [11]
 

 ORPC Rule 1.5,
 
 5 O.S. 2011
 
 ch. 1, app. 3-A.
 

 [12]
 

 ORPC Rule 1.15, 5 O.S.2011 ch. 1, app. 3-A.
 

 [13]
 

 Compl't's Ex. 56 at 2.
 

 [14]
 

 Id.
 
 at 8. The fee would have gone up to 40% had Kruger initiated formal proceedings-45% had the case gone to trial.
 

 [15]
 

 Id.
 
 at 4.
 

 [16]
 

 ORPC Rule 1.4, 5 O.S.2011 ch. 1, app. 3-A.
 

 [17]
 

 ORPC Rule 1.5,
 
 5 O.S. 2011
 
 ch. 1, app. 3-A.
 

 [18]
 

 ORPC Rule 1.8(e), (i),
 
 5 O.S. 2011
 
 ch. 1, app. 3-A.
 

 [19]
 

 ORPC Rule 1.15, 5 O.S.2011 ch. 1, app. 3-A.
 

 [20]
 

 See
 
 RGDP Rule 5.2, 5 O.S.2011 ch. 1, app. 1-A;
 
 Braswell
 
 ,
 
 1998 OK 49
 
 , ¶¶ 80-103,
 
 975 P.2d at 422-31
 
 .
 

 [21]
 

 RGDP Rule 5.2, 5 O.S.2011 ch. 1, app. 1-A.
 

 [22]
 

 Trial Panel Report at 10-11.
 

 [23]
 

 Kruger now argues that the PRT's leniency was prejudicial to him because it resulted in the ten days of trial being spread out over several months. In light of Kruger's conduct during these proceedings, however, we find the time and process required to compile this ample record was neither unreasonable nor prejudicial.
 

 [24]
 

 Tr.Vol.IX at 2479:10-11.
 

 [25]
 

 Id
 
 . at 2543:6-8.
 

 [26]
 

 ORPC Rule 3.3, 5 O.S.2011 ch. 1, app. 3-A.
 

 [27]
 

 ORPC Rule 3.4, 5 O.S.2011 ch. 1, app. 3-A.
 

 [28]
 

 ORPC Rule 8.1, 5 O.S.2011 ch. 1, app. 3-A.
 

 [29]
 

 ORPC Rule 8.4, 5 O.S.2011 ch. 1, app. 3-A.
 

 [30]
 

 See, e.g., State ex rel. OBA v. Leonard,
 
 2016 OK 11
 
 ,
 
 367 P.3d 498
 
 ; State ex rel. OBA v. Trenary,
 
 2016 OK 8
 
 ,
 
 368 P.3d 801
 
 ; State ex rel. OBA v. Parker,
 
 2015 OK 65
 
 ,
 
 359 P.3d 184
 
 ; State ex rel. OBA v. Raynolds,
 
 2015 OK 17
 
 ,
 
 348 P.3d 208
 
 .