2002 OK 33

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Thomas L. ALLDER, Respondent.**

**SCBD No. 4636.**

Supreme Court of Oklahoma.

April 23, 2002.

Allen J. Welch, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

Thomas L. Allder, Oklahoma City, OK, Respondent, pro se.

OPINION

WATT, V.C.J.

¶ 1 On July 30, 2001, the Oklahoma Bar Association filed a complaint alleging professional misconduct by Respondent, Thomas L. Allder. Allder filed his answer on August 13, 2001. The parties entered into a stipulation,

which was filed on October 15, 2001. Allder and the Bar stipulated that Allder had violated the Oklahoma Rules of Professional Conduct as a result of his conduct before the United States Bankruptcy Court and further stipulated that appropriate discipline would be public censure and the assessment of costs.

¶ 2 A hearing was held before a trial panel of the Professional Responsibility Tribunal on October 25, 2001. On January 30, 2002, the trial panel filed its recommendation and recommended the discipline stipulated to by the parties: public censure and the payment of costs. On March 18, 2002, the Bar filed its application to assess costs in the amount of $1,127.74.

## FACTS AND PROCEDURAL BACKGROUND

¶ 3 The Oklahoma Bar Association filed its complaint based on findings by the United States Bankruptcy Court and a subsequent settlement agreement between Allder and the U.S. Bankruptcy Trustee, which the Bankruptcy Court and the United States District Court approved. Allder, a member of the Oklahoma Bar Association, had a practice that was largely limited to the Bankruptcy Court in Oklahoma City, in which he filed more than two-hundred cases a year. The agreement between Allder and the Bankruptcy Trustee resulted in Allder's being suspended from practicing in the Bankruptcy Court for a period of five years. and further agreeing to refund attorney's fees to any of his clients who demanded such refunds.

¶ 4 Allder had been a practicing lawyer for fourteen years. He has not been the subject of any other Bar disciplinary proceedings.

¶ 5 Most of Allder's clients were low income individuals with few assets. Many of these clients lacked the cash to pay Allder's fee and Bankruptcy Court filing fees. Consequently, Allder frequently referred his clients to loan companies and arranged for them to borrow $650.00, the amount necessary to allow them to pay Allder's attorney's fee plus the Bankruptcy Court's filing fees. The clients would repay the loans at the rate of $90.00 per month for ten months. The parties stipulated that the effective interest rate on these loans varied from 28.23% per annum to 88.5% per annum but that the loans were made in the ordinary course of the finance companies' business and that Allder had no control over the terms of the loans. The parties also stipulated that Allder had no financial interest in any of the finance companies who made the loans to his clients and did not benefit financially in any way from the interest or fees that the finance companies collected on those loans. Further, the trial panel found that the loans were not usurious and their terms complied with Oklahoma law.

¶ 6 The Bankruptcy Code, 11 U.S.C. § 329, requires that an "attorney representing a debtor in a case under this title ... shall file with the court a statement of the compensation paid or agreed to be paid ... for the services rendered or to be rendered in contemplation or in connection with the case by such attorney, and the source of such compensation." Section 329 is implemented by Rule 2016(b) of the Federal Rules of Bankruptcy Procedure, which provides, "Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code...." In fifteen cases, Allder failed to reveal in his disclosure statement both that loans had been made by finance companies to his clients immediately before bankruptcy and that part of the proceeds from such loans had been used to pay his attorney's fee. Further, Allder failed to disclose any of the loans obtained by his clients in any Schedule F (Creditors Holding Unsecured Nonpriority Claims) he filed in the Bankruptcy Court on behalf of his clients.

¶ 7 Only one of Allder's debtor clients filed a grievance with the Bar and that client later withdraw the grievance and the matter was dismissed by the Professional Responsibility Commission.

¶ 8 The Bankruptcy Trustee alleged that Allder's failure to disclose the loans and that their proceeds had been used to pay attorney's fees and filing fees was misleading and

violated Bankruptcy Court Rules. After a hotly contested trial in the Bankruptcy Court, the court indicated that it was prepared to sanction Allder. Before the Bankruptcy Court formally sanctioned Allder, however he entered into the settlement agreement with the Trustee.

¶ 9 The Bar contended in its complaint that Allder had violated Rules 1.7(b),[1] 3.3(a)(1),[2] and 8.4(c),[3] Oklahoma Rules of Professional Conduct. The parties stipulated before the trial panel that Allder's statements in the Bankruptcy Court disclosure statements were improper, misleading and ambiguous.

¶ 10 The Bankruptcy Court issued an opinion in which it concluded that Allder had a conflict of interest with respect to the loans for attorney's fees because he had a duty to advise the debtor that the loan was dischargeable but if he did so, he risked losing his attorney's fee. The trial panel, however, found that there was no indication that such conduct was a conflict of interest, although it also observed that the evidence presented to the Bankruptcy Court might have differed from that presented to the trial panel.

¶ 11 The trial panel found that Allder's conduct had been misleading because it failed to reveal the debtors' true financial situation and understated the ratio their expenses bore to their income. Nevertheless, the trial panel also noted that Allder no only did not profit from the loans but also refunded more than $9,000.00 in fees to former clients. In the cases in which Allder made the refunds his clients received his services free of charge. We note, too, that Allder clearly believed that he was acting in the best interests of his clients. Because of his belief that

his actions were in his clients' best interests, Allder displayed some bitterness toward the Bankruptcy Court. He has, however, since apologized.

## RECOMMENDED DISCIPLINE

¶ 12 Based on their stipulated facts the parties agreed that appropriate discipline would be public censure. The trial panel recommended to this Court that Allder's discipline be public censure.

## DISCUSSION

¶ 13 There is no dispute here as to either the facts or the law. Allder and the Bar stipulated both to the facts and that Allder had violated the Oklahoma Rules of Professional Conduct. The trial panel accepted those stipulated findings and recommended the same discipline as that stipulated to by the parties, public censure and the payment of costs. As is our duty, we have considered this matter *de novo*, that is we have examined the record independently and non-deferentially. *State ex rel. Oklahoma Bar Association v. Evans*, 1994 OK 45 ¶ 12, 880 P.2d 333, 337. Our independent examination of the record leads us to conclude that the record supports the facts stipulated to by the parties, the application of the law to those facts made by the trial panel, and the recommended discipline.

¶ 14 Our responsibility in a bar disciplinary proceeding "is not to punish but to inquire into the lawyer's continued fitness, with a view toward safeguarding the interest of the public, the courts, and the legal profession." *State ex rel. Okla. Bar Ass'n v. Adams*, 1995 OK 17 ¶ 4, 895 P.2d 701, 704. It is clear to

---

1. Rule 1.7(b) provides as follows:

   A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
   1. (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

2. Rule 3.3(a)(1) provides as follows:

   A lawyer shall not knowingly:
   1. (1) make a false statement of fact or law to a tribunal;

3. Rule 8.4(c) provides as follows:

   It is professional misconduct for a lawyer to:

   . . .
   (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

us that Allder acted in a manner that he thought was in the best interests of his clients. Further, he has cooperated with the Bar through out this proceeding. Thus, it appears unlikely that the public will be endangered by our decision to allow Allder to continue in the practice of the law.

¶ 15 In *State ex rel Oklahoma Bar Association v. Malloy*, 2001 OK 101 ¶¶ 13–14, 37 P.3d 874, we observed, "In circumstances where, as here, a lawyer has violated the Oklahoma Rules of Professional Conduct but has been guilty of no acts that have harmed his clients we have held that public censure is appropriate punishment. See *State ex rel. Oklahoma Bar Association v. Borders*, 1989 OK 101, 777 P.2d 929; *State ex rel. Oklahoma Bar Association v. Blackburn*, 1991 OK 35, 812 P.2d 379; and the cases cited in note 4 of *Blackburn*." We then held in *Malloy* "that public censure and the imposition of costs ... is the appropriate punishment here." Here, as previously noted, Allder acted as he did because he thought that doing so was in his clients' best interests. Thus, based on *Malloy* and for the reasons set out below, we hold that public censure and the imposition of costs is the appropriate discipline in this matter.

¶ 16 The trial panel recommended that we impose the discipline stipulated for by the parties: public censure. The trial panel did so because it thought the substantial discipline already imposed by the Bankruptcy Court, a five year suspension from practice there, was sufficient discipline in the practice area. The trial panel's recommendation was also influenced by the fact that Allder has received no compensation in the fifteen cases about which the Bankruptcy Court and its Trustee complained. Nevertheless, the trial panel was concerned by the hostile attitude Allder had displayed toward the Bankruptcy Court and thought that some additional discipline by this Court was warranted. We agree. We see no reason to impose greater discipline than that stipulated to and recommended by the trial panel because Allder has apologized for his remarks about the Bankruptcy Court and because the discipline he has already received in the area of his practice is substantial, we hold that public cen-

sure and the payment of costs is appropriate discipline here. It is the order of the Court that Allder pay the costs of the proceeding, $1,127.74, not later than thirty days after the date this opinion is filed.

RESPONDENT PUBLICLY CENSURED AND ORDERED TO PAY THE COSTS OF THE PROCEEDING IN THE AMOUNT OF $1,127.74.

ALL JUSTICES CONCUR.