OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HYDE

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HYDE
2017 OK 59
Case Number: 6457
Decided: 06/27/2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 59, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

State of Oklahoma ex rel. Oklahoma Bar Association, Complainant,
v.
Martha Lynne Hyde, Respondent.

ORIGINAL PROCEEDING FOR ATTORNEY DISCIPLINE

¶0 The Oklahoma Bar Association instituted this summary disciplinary proceeding pursuant to the reciprocal discipline Rule 7.7 of the Rules Governing Disciplinary Proceedings, Okla. Stat. tit. 5, ch. 1, app. 1-A (Supp. 2014). The United States Bankruptcy Court for the Northern District of Oklahoma issued an Agreed Order and an Agreed Judgment Granting Motions for Sanctions, both sanctioning Martha Lynne Hyde and prohibiting her from practicing law in the United States Bankruptcy Court for the Northern District of Oklahoma and the United States Bankruptcy Court for the Eastern District of Oklahoma for a period of five years.

SIX-MONTH SUSPENSION IS IMPOSED

Gina L. Hendryx, General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.
Martha Lynne Hyde, Respondent, Tulsa, Oklahoma, pro se.

Colbert, J.

¶1 Martha Lynne Hyde (Respondent) is before this Court in a summary disciplinary proceeding initiated by the Oklahoma Bar Association (Complainant) pursuant to the reciprocal disciplinary provisions found at Rule 7.7 of the Rules Governing Disciplinary Proceedings (RGDP), Okla. Stat. tit. 5, ch. 1, app. 1-A (Supp. 2014).[1] This provision makes disciplinary action in another jurisdiction the basis for this Court's discipline of a lawyer.

PROCEDURAL HISTORY AND FACTS 

¶2 Respondent graduated from the University of Miami School of Law in 1990 and passed the Florida Bar Examination in 1991. She did not work as a lawyer until she moved to Oklahoma. She was admitted to the Oklahoma Bar in September of 2012, and began practicing law in January of 2013. On November 4, 2016, Respondent contacted the General Counsel of the Oklahoma Bar Association inquiring whether an "Agreed Judgment Granting Motions for Sanctions" and an "Agreed Order" issued by the United States Bankruptcy Court for the Northern District of Oklahoma-both of which sanctioned Respondent, prohibiting her from practicing law in the Northern and Eastern Districts of the United States Bankruptcy Court of Oklahoma for five years-were matters that needed to be reported to the Bar pursuant to the terms of Rule 7.7, RGDP.

¶3 On November 9, 2016, the Complainant advised the Court of these orders. We issued an order allowing Respondent to show cause in writing why a final order of discipline should not be imposed upon her or to request a hearing before the Professional Responsibility Tribunal (PRT). Respondent timely requested a motion for an extension of time to file her response to this Court's order, and that motion was granted.[2] Respondent made no request for a hearing before the PRT.

¶4 Today's cause shows that multiple sanction motions were filed against Respondent in two related matters before the United States Bankruptcy Court of the Northern District of Oklahoma. The underlying litigation in this bankruptcy matter spans several years and portions of that litigation predate Respondent's involvement in the case.

¶5 In November 2012, Stephen Lynch (Plaintiff) and his wife agreed to an Order Approving Compromise and Agreed Judgment in a bankruptcy proceeding before the U.S. Bankruptcy Court for the Northern District of Oklahoma.[3] In June 2014, Plaintiff hired Respondent to represent him to attempt to set aside the Bankruptcy Court's order.[4] On August 14, 2014, almost two years after entry of the Order Approving Compromise, Plaintiff, through Respondent, filed a "Notice of Appeal and/or Motion to Vacate" seeking to vacate this Order. The Notice of Appeal was dismissed as untimely by the Bankruptcy Appellate Panel (B.A.P.) on September 29, 2014. On October 20, 2014, the Bankruptcy Court entered a minute order finding the Motion to Vacate "fatally deficient" as it had "no legal or factual support for [its] conclusion." The Bankruptcy Court then gave Plaintiff additional time to supplement the filing. No supplement was filed, resulting in the Bankruptcy Court denying the Motion to Vacate.

¶6 On November 4, 2014, Plaintiff filed an Adversary Proceeding against multiple parties in the bankruptcy matter. Among those parties were Patrick. J. Malloy, III, the Estate Trustee; Judge Terrence Michael of the U.S. Bankruptcy Court of Oklahoma for the Northern District; the District Courts for Osage County and Tulsa County; and Steven Soule( and Robert Sartin, the attorneys representing Kleinco.

¶7 Plaintiff, through Respondent, alleges in his actions, among other things, lack of jurisdiction, violation of due process, violation of the automatic stay, and fraud on the court.

¶8 Following a hearing, the Bankruptcy Court dismissed the Adversary Proceeding with prejudice as to all Defendants. Defendants filed Motions for Sanctions, including Amended or Supplemental Motions for Sanctions, against the Respondent, her firm, the Plaintiff, and a third party based on violations of Fed.R.Bankr.P. Rule 9011.[5] They alleged, inter alia, Respondent abused the bankruptcy process, filed frivolous and vexatious litigation, misrepresented facts and evidenced disregard for the law. Plaintiff filed a Combined Response to Defendants' Motions for Sanctions and for Attorney Fees and Costs. All Defendants filed their Joint Reply, and Plaintiff filed a Sur-Reply. Plaintiff perfected his appeal from the dismissed Adversary Proceeding to the U.S. District Court of the Northern District of Oklahoma. On February 16, 2016, Defendants filed their response briefs.

¶9 On February 25, 2016, Plaintiff terminated Respondent's representation of him and hired new counsel. His new lawyer timely filed a Motion to Dismiss the Appeal wherein Plaintiff requested dismissal subject to and without prejudice to all pending motions for sanctions. The District Court granted the Plaintiff's motion.

¶10 At the time of Plaintiff's termination of Respondent as his counsel, there was a pending Joint Motion for Sanctions against Respondent filed by counsel for the Kleinco Defendants in the Adversary Proceeding in the U.S. District Court for the Northern District of Oklahoma, alleging a bad faith threat of criminal prosecution. This Joint Motion for Sanctions was based on affidavits filed by the Appellees concerning statements Respondent allegedly made during a December 8, 2015, meeting. Those affidavits alleged Respondent "expressed her belief that counsel had influence over the bankruptcy judge presiding over the case; that the local bankruptcy judges, magistrate judges and district judges are biased in favor of the defendant attorneys; and that criminal acts had been committed by the trustee and attorneys in this case."[6] Respondent did not timely file a response brief with the U.S. District Court. Because the U.S. Magistrate believed the Joint Motion alleged professional misconduct rather than an issue related to the merits of the now dismissed bankruptcy appeal, the motion was denied on May 2, 2016, and the matter referred to the Committee on Admissions and Grievances of the U.S. District of Court of the Northern District of Oklahoma.

¶11 The Estate Trustee also filed motions seeking the imposition of sanctions and/or findings of contempt against Respondent related to her conduct in connection with the initial bankruptcy case Rule 2004 Exam issues. An evidentiary hearing was held on February 17, 2016, concerning the Trustee's Motions for Sanctions and Contempt against Respondent and Plaintiff and a Motion for Sanctions and Disgorgement of Fees filed against Trustee Malloy. According to Respondent, it was there she announced that the Plaintiff intended to make a formal complaint about potentially criminal conduct by Malloy and Soule( during Plaintiff's 2012 bankruptcy proceedings.

¶12 Respondent retained counsel to represent her concerning the pending motions for sanctions against her in the initial bankruptcy matter and the Adversary Proceeding. This resulted in a June 1, 2016, order where, in consideration of this order, the Trustee withdrew his pending Motions for Sanctions and Contempt in the main bankruptcy matter and separate Motions for Sanctions filed in the Adversary Proceeding. Respondent failed timely to comply with provisions of this June order.[7] The Trustee then renewed his Motion for Sanctions and Contempt against Respondent in both matters and further requested a finding of contempt and additional sanctions against Respondent for failing to comply with the terms of the June order.

¶13 Approximately a week prior to a scheduled hearing on sanctions, Respondent made an offer of settlement that resulted in the Agreed Judgment and Agreed Order. The agreements suspended Respondent from practice before the Northern and Eastern Districts of the U.S. Bankruptcy Court for five years, and form the basis of this reciprocal disciplinary proceeding.

STANDARD OF REVIEW

¶14 "This Court has original and exclusive jurisdiction over all matters having to do with the admission or discipline of persons admitted to the practice of law in Oklahoma." State ex rel. Okla. Bar Ass'n v. Leonard, 2016 OK 11, ¶ 5, 367 P.3d 498, 500 (citing State ex rel. Okla. Bar Ass'n v. Allford, 2006 OK 85, ¶ 2, 152 P.3d 190, 191). "Our review of the record is de novo in which we conduct a non-deferential, full-scale examination of all relevant facts . . .." Leonard, 2016 OK 11, ¶ 5, 367 P.3d at 500.

¶15 This Court has a "nondelegable responsibility" to determine whether a violation of the rules has occurred and, if so, to determine what discipline is appropriate. State ex rel. Okla. Bar Ass'n v. Wilburn, 2006 OK 50, ¶ 3, 142 P.3d 420, 422. "To discharge this responsibility, we must re-examine the record and assess the weight and credibility of the evidence to determine whether the attorney's misconduct is established by clear and convincing evidence. If it is, we must impose the appropriate discipline." Allford, 2006 OK 85, ¶ 3, 152 P.3d at 191.

RESPONSE TO NOTICE OF ORDER OF DISCIPLINE

¶16 Respondent submits that there is no basis for reciprocal discipline here. According to Respondent the type of discipline that forms the basis for reciprocal discipline is that which is imposed by the Bankruptcy Court and subsequently confirmed by the District's Disciplinary Committee. She asserts: (1) because the judgment and order in question were the result of a settlement among the parties which was encouraged by the judge, it does not equate to discipline that is imposed upon her pursuant to Rule 7.7(a); and (2) because the judgment and order were settled, they were never adjudicated and referred to the disciplinary arm for the jurisdiction in accordance with the 7.7(b) terms. Respondent further claims the documents in this instance-the judgment and order-do not contain any charge because they represent settlements between the parties and thus cannot be prima facie evidence of any act pursuant to Rule 7.7(b).

¶17 First, Respondent views-and encourages this court to view-the judgment and order of the Bankruptcy Court as a consent judgment and thus urges it is not an adjudication that has been imposed upon her. See e.g., State ex rel. Okla. Bar Ass'n v. Heinen, 2002 OK 81, ¶ 6, 60 P.3d 1018, 1020. This Court has addressed consent judgments and when they may or may not be used for claim or issue preclusion. Id., ¶ 7, 60 P.3d at 1020. We have explained that in the context of a non-civil and sui generis disciplinary proceeding, like that before us today, this Court is not bound to give preclusive effect to an order of a foreign jurisdiction imposing professional discipline; however, because of our reciprocal disciplinary rule, neither do we ignore it.[8] Id., 60 P.3d at 1020 (citing Patterson, 2001 OK 51, ¶ 6, 28 P.3d 551, 554-55).

¶18 Although phrased as a query, Respondent reported her suspension from practice in the Bankruptcy Court in compliance with the 7.7(a) terms. Complainant then provided to this Court the documents that suspended her from that practice of law pursuant to the terms of Rule 7.7(b). The Rule 7.7(b) terms provide, "[t]he documents shall constitute the charge and shall be prima facie evidence the lawyer committed the acts therein described." Its terms further confine a respondent's attack on another jurisdiction's fact-finding to the evidence contained in a certified copy of the transcript of that jurisdiction's proceedings. State ex rel. Okla. Bar Ass'n v. Wintory, 2015 OK 25, ¶ 18, 350 P.3d 131, 136. Facts that resulted in the levying of discipline in the foreign jurisdiction are not relitigated but may be reviewed in the context of the evidence previously presented in the foreign jurisdiction. Patterson, 2001 OK 51, ¶ 6, 28 P.3d at 555. They may be used to support a lawyer's claim that the findings do not furnish sufficient grounds for discipline in Oklahoma and to present evidence tending to mitigate the severity of discipline imposed by this Court. Id., ¶¶ 6-7, 28 P.3d at 554-55).

¶19 According to Respondent, approximately a week before the scheduled hearing on sanctions before the Bankruptcy Court, Respondent and the parties agreed upon a settlement which resulted in the Agreed Judgment and Agreed Order before us today. There was no hearing and no evidence was presented. Hence, no certified copy of a transcript of evidence taken in the Bankruptcy Court exists for this Court to consider. The Motions for Sanctions against Respondent in the Bankruptcy proceedings were the allegations of misconduct that became conclusively established upon her agreement to them.[9] Respondent's submissions to this Court, therefore, are limited to issues that are related to explaining her conduct before the Bankruptcy Court and the mitigation or severity of the discipline to be imposed upon her. Wintory, 2015 OK 25, ¶ 19, 350 P.3d at 136.

¶20 This Court has imposed reciprocal discipline upon lawyers following approval of their resignation from the practice of law in lieu of disciplinary action in a sister-state jurisdiction. See Heinen, 2002 OK 81, 60 P.3d 1018; State ex rel. Okla. Bar Ass'n v. Bransgrove, 1998 OK 93, 976 P.2d 540. Respondent urges her situation is distinguishable from this scenario because here the Bankruptcy Judge pressed the parties to settle.[10] This argument is without merit. Respondent's situation is not outside of the circumscribed parameters we enunciated in Patterson and Heinen when dealing with a consent judgment in the context of a reciprocal disciplinary matter. The Bankruptcy Judge indeed may have urged the parties to settle matters. Respondent, however, did not have to settle. She had the opportunity to present her position at the hearing scheduled in the Bankruptcy Court. She agreed to a settlement. A judge's exhorting the parties to settle a matter in no way diminishes an attorney's responsibility when entering into the terms of an agreement.

¶21 Respondent's assertion that an order or judgment that is based upon the parties' agreement is not an adjudication also is mistaken. That her suspension from practicing law in the named jurisdiction was the result of an agreement for discipline by consent does not negate the adjudicatory effect of a court's judgment or order. The judgment and order of the Bankruptcy Court is sufficient to show professional misconduct by the Respondent.

¶22 We turn next to Respondent's contention that, because the sanctions imposed upon her by the Bankruptcy Court were not then submitted to and confirmed by the Northern District's Disciplinary Committee, it does not form the basis for discipline here. In the same context, she argues that she was not disciplined by the Bankruptcy Court, only sanctioned.

¶23 In State ex rel. Okla. Bar Ass'n v. Oliver, 2016 OK 37, 369 P.3d 1074, this Court heard in a Rule 7.7, RGDP, proceeding a similar factual scenario to that which we have before us today. There the U.S. Bankruptcy Court of the Western District of Oklahoma, through a graduated imposition of sanctions for noncompliance with Bankruptcy Court orders for meeting electronic pleading requirements, suspended Mr. Oliver from the practice of law in the U.S. Bankruptcy Court for the Western District of Oklahoma. Mr. Oliver failed to notify the Bar of his suspension. After the Bar's receipt of his suspension and its transmittal of the case to the Chief Justice, Mr. Oliver requested a hearing before the PRT and the case proceeded under Rule 7.7, RGDP. This Court determined public censure was the appropriate discipline for his failure to report his suspensions in accordance with 7.7(a) and for failing to timely notify his bankruptcy clients of his suspensions.

¶24 We provide the details of Oliver here because although this Court has entertained a reciprocal disciplinary case based upon a Bankruptcy Court's sanction of a legal practitioner, we are mindful of an attorney's right to notice and opportunity to be heard in this context. That the Bankruptcy Court here did not refer to the Northern District's Disciplinary Committee the sanction it imposed upon Respondent is not within this Court's purview for review. Indeed, Respondent cites to dictum for her assertion that referral to that committee is the usual procedure followed by the Bankruptcy Court for imposing sanctions on an attorney for violations of Rule 9011.

¶25 Notwithstanding Respondent's contentions, her conduct in representing her client before the Bankruptcy Court demonstrates she has violated multiple provisions of Oklahoma's Rules of Professional Conduct (ORPC), Okla. Stat. tit. 5, ch. 1, app. 3-A (2011). This includes her: failure to provide competent representation for her client, Rule 1.1;[11] failure to file meritorious claims and contentions, Rule 3.1;[12] failure to conduct her representation of her client in fairness to the opposing party and counsel, Rule 3.4(d);[13] engaging in conduct prejudicial to the administration of justice, Rule 8.4(d).[14]

DISCIPLINE

¶26 It should be noted that effective May, 19, 2017, this Court administratively suspended Respondent from the practice of law for non-payment of dues and non-compliance with Mandatory Continuing Legal Education requirements. One condition to a practitioner's continued practice of law in this State is compliance with the MCLE requirements and timely payment of annual bar dues. See In re: Suspension of Members of the Okla. Bar Ass'n, 2017 OK 45; In re: Suspension of Members of the Okla. Bar Ass'n, 2017 OK 44. Respondent's conduct, here, indicates a disregard of and indifference to the rules governing Oklahoma practitioners. Respondent did not attempt to defend her license to practice law by allowing her license to lapse for nonpayment of dues and noncompliance with MCLE requirements during the pendency of this proceeding.

¶27 Nevertheless, the Respondent submits to the Court several factors for purposes of mitigation of discipline including: health problems she experienced during the litigation,[15] the severity of the sanction imposed, her good faith advocacy of her client, her status as new attorney and that Plaintiff was her first client in private practice, and her current employer's recommendation of her.[16] Further, she has admitted to the Bankruptcy Court that she committed procedural errors during her year-and-a-half representation of the Plaintiff and that she regrets these errors. We do not agree that all of the factors proposed by Respondent are mitigating factors.

¶28 In disciplinary matters this Court's objective is not to punish the attorney but to "protect the interests of the public, the courts and the legal profession." Hayes, 2011 OK 71, ¶ 11, 257 P.3d 1000 at 1003-04. "Each case of attorney discipline is unique with its own circumstances and transgressions. However, this Court will look to its previous decisions in similar instances for guidance." Id., ¶ 12, 257 P.3d at 1004.

¶29 The Complainant brings to our attention this Court's decision in State ex rel. Okla. Bar Ass'n v. Tweedy, 2000 OK 37, 52 P.3d 1003. There we suspended the respondent from the practice of law for six (6) months for filing multiple vexatious motions and suits in three separate matters in federal courts. The U.S. District Court for the Northern District of Oklahoma suspended the respondent for three years and the U.S. Court of Appeals for the Tenth Circuit disbarred him. Although the PRT recommended that Mr. Tweedy be disbarred, this Court noted that while the respondent had "exceeded the bounds of zealous advocacy" by his pursuit of baseless legal claims and remedies, his conduct did not warrant disbarment. Id., ¶ 51, 52 P.3d at 1013. The Court's review of cases where disbarment was imposed, revealed the existence of a more serious degree of culpability.[17] Id., 52 P.3d at 1013. The Court was persuaded that the discipline imposed on the respondent by the Northern District and the Tenth Circuit effectively served to deter him from subsequent acts of professional misconduct. Id., ¶ 52, 52 P.3d at 1012. Even considering Respondent's having received a private reprimand for trust account violations, this Court determined a six-month suspension from the practice of law to be the appropriate measure of discipline.[18] Id., ¶ 49, 52 P.3d at 1012.

¶30 "In a reciprocal disciplinary proceeding, it is within this [C]ourt's discretion to visit the same discipline as that imposed in the other jurisdiction or one of greater or lesser severity." Patterson, 2001 OK 51, ¶ 33, 28 P.3d 551, 561. We also strive to impose a quantum of discipline upon an offending lawyer that is consistent with that imposed upon other lawyers for similar acts of professional misconduct. State ex rel. Okla. Bar Ass'n v. Kleinsmith, 2013 OK 16, ¶ 4, 297 P.3d 1248, 1250. Crafting the appropriate discipline requires consideration of the goals of discipline set in the context and accompanying complexities of each case.

¶31 The Court in Tweedy was persuaded that the sanctions meted out by the federal courts had worked to stop the offending conduct and effectively served the purpose of discipline-protecting the courts, the public, and the legal system. Tweedy, 2000 OK 37, ¶ 52, 52 P.3d at 1011-12. In Tweedy, we emphasized that the federal jurisdictions' discipline was relevant as a mitigating factor only to the extent that it had served its safeguarding purpose; it was not to suggest that the respondent there had already been sufficiently disciplined. Id., ¶¶ 42-44, 52 P.3d at 1011-12. The Court viewed the discipline of the federal court as a significant mitigating factor. Id., ¶ 44, 52 P.3d at 1012.

¶32 An additional mitigating factor we perceive to be worthy of consideration in today's cause is that of Respondent's status as a new practitioner of the law. In noting this, we emphasize that we do not hold new legal practitioners to different standards from more seasoned lawyers. We remark on this difference solely as a distinguishing factor from those cases we examined for guidance where the legal practitioners had far greater experience and as a caution to new attorneys.

¶33 As a new lawyer, Respondent undoubtably exceeded the bounds of zealous advocacy. Her actions severely impacted others and their resources-clients, lawyers and the judiciary. She displayed a lack of competency and insolence in the practice of bankruptcy law. Respondent, however, was practicing on her own with little prior training or supervision[19] and refused to ask for help. Suspension from bankruptcy court practice in two districts for a five-year period is severe. Its imposition is curative of further offenses in the affected jurisdictions and meets the multiple objectives of protecting the public, the courts, other attorneys, and restoring confidence in the legal system. It, standing alone, does not disqualify her from the practice of law in the Courts of Oklahoma nor from further discipline by this Court. But, Respondent's failure to maintain her license does.

¶34 Respondent's acts are akin to those in Tweedy and, as in Tweedy, we believe the foreign jurisdiction's discipline to be a significant mitigating factor in today's cause. Respondent was barred from bankruptcy practice for five years in the Northern and Eastern Districts of Oklahoma. She was new to the practice of law and without supervision or training. Discipline should be imposed, although we do not believe five years is the proper measure of discipline here. For these reasons, Respondent is suspended for six months and ordered to participate in Lawyers Helping Lawyers.

SIX-MONTH SUSPENSION IS IMPOSED

Gurich, V.C.J., Kauger, Watt, Winchester, Edmondson, Colbert, Reif, and Wyrick, JJ., concur;

Combs, C.J., dissents

Combs, C.J., dissenting
I would suspend the Respondent for two years.

FOOTNOTES

[1] The terms of Rule 7.7, RGDP, provide:

a) It is the duty of a lawyer licensed in Oklahoma to notify the General Counsel whenever discipline for lawyer misconduct has been imposed upon him/her in another jurisdiction, within twenty (20) days of the final order of discipline, and failure to report shall itself be grounds for discipline. (emphasis added).

b) When a lawyer has been adjudged guilty of misconduct in a disciplinary proceeding, except contempt proceedings, by the highest court of another State or by a Federal Court, the General Counsel of the Oklahoma Bar Association shall cause to be transmitted to the Chief Justice a certified copy of such adjudication within five (5)days of receiving such documents. The Chief Justice shall direct the lawyer to appear before the Supreme Court at a time certain, not less than ten (10) days after mailing of notice, and show cause, if any he/she has, why he/she should not be disciplined. The documents shall constitute the charge and shall be prima facie evidence the lawyer committed the acts therein described. The lawyer may submit a certified copy of transcript of the evidence taken in the trial tribunal of the other jurisdiction to support his/her claim that the finding therein was not supported by the evidence or that it does not furnish sufficient grounds for discipline in Oklahoma. The lawyer may also submit, in the interest of explaining his/her conduct or by way of mitigating the discipline which may be imposed upon him/her, a brief and/or any evidence tending to mitigate the severity of discipline. The General Counsel may respond by submission of a brief and/or any evidence supporting a recommendation of discipline. (emphasis added).

[2] In Respondent's request for an extension of time to file her response, and in her submissions to this Court, she notes that today's cause also relates to a grievance against her filed with the General Counsel's Office of the Oklahoma Bar Association by Defendants Robert Sartin, Steven Soule(, Eric Daffern, and Patrick J. Malloy III in April of 2016. The Bar makes no mention of this matter in its response, and the record is otherwise silent concerning the status of this grievance.

[3] Gwenna Lynch had been in a partnership dispute with her former business partner (Kleinco Residential Construction, LLC, (Kleinco)) since 2008. On August 25, 2011, Gwenna and her husband, Stephen Lynch, filed their voluntary petition for bankruptcy relief. The case was converted from a Chapter 11 to Chapter 7 proceeding. Kleinco filed an Adversary Complaint against Debtors objecting to the dischargability of Debtors' debt to Kleinco and an objection to Debtors' claim of homestead exemption in certain real property in Osage County. The Lynches eventually lost their home in a foreclosure action. The court approved the Order Approving Compromise, and an Agreed Judgment was filed with the court in favor of Kleinco in the amount of $1,078,064.33 that was nondischargable.

[4] Respondent represents Plaintiff Stephen Lynch in the ensuing litigation.

[5] All motions for sanctions in the Adversary Proceeding filed against the Plaintiff and the third party were eventially dismissed. The motion for sanctions against the third party-Plaintiff's fiance who was funding the litigation-were based on the inherent power of the court to sanction non-parties, not Fed.Bankr.P. 9011.

[6] According to the May 2, 2016, Opinion and Order of U.S. Magistrate Judge, the affidavits further recite that Respondent stated "that if the attorneys did not pay her client three million dollars, she would prosecute criminal charges against the trustee and the attorneys, she would escalate the pending litigation, and that their families would suffer if she pursued the criminal allegations and they were disbarred."

[7] These provisions required Respondent to meet with Lawyers Helping Lawyers and provide an independent evaluation of her physical and mental well being.

[8] For a more complete discussion of the nature of a reciprocal disciplinary proceeding, see Patterson, 2001 OK 51, ¶¶ 5-8, 28 P.3d 551, 54-57.

[9] Respondent asserts the documents here do not describe any conduct or charge, rather they represent the parties' settlements. This, she claims, supports her position that the documents do not form the basis for discipline in a Rule 7.7, RGDP, proceeding. The Bankruptcy Court's Order and Judgment specifically reference the Defendants' Motion for Sanctions. Hence, these are incorporated by reference.

Respondent claims that the Agreed Judgment Granting Motions for Sanctions in the Adversary Proceeding was based on allegations that it had been filed without basis in law or fact in violation Fed.R.Bnkr.P. 9011. She cites In re Kaliana, 207 B.R. 597, 603 (Bankr. N.D. Ill. 1997), as authority for the proposition that Bankruptcy Rule 9011 sanctions should not be utilized to penalize an attorney for taking new and innovative positions. Because the limitations imposed by Rule 7.7(b) prohibit our challenge of the other jurisdiction's adjudication, we do not address Respondent's claim.

Likewise, we do not address Respondent's argument that whether reciprocal discipline is warranted on the basis of the Agreed Order depends on whether that order granted sanctions or contempt. The Agreed Order references the Trustee's Renewed Motion For Sanctions and A Finding of Contempt, and the Order specifies that it granted the Trustee's Motion for Sanctions.

[10] In her response to this Court's Notice of Order of Discipline, Respondent mistakenly cites to Patterson, 2001 OK 51, 28 P.3d 551, for this argument. Patterson neither deals with nor addresses this factual scenario.

[11] Rule 1.1 provides, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

[12] Rule 3.1 provides, "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law . . .."

[13] Rule 3.4(d) provides, "A lawyer shall not: (d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party; . . .."

[14] Rule 8.4(d) provides, "It is professional misconduct for a lawyer to: (d) engage in conduct that is prejudicial to the administration of justice; . . .."

[15] Respondent experienced health problems during a significant period of her representation of Plaintiff. Because of a physician-prescribed prescription-medication change during the pertinent time period, Respondent indicated she was suffering from undiagnosed side effects of a prescription drug to counteract seizures.

[16] As a final mitigating factor, Respondent believes the Adversary Proceeding was a meritorious lawsuit based in fact and law because on December 7, 2016, Kleinco filed a Partial Release of Judgment as to Plaintiff in the Bankrupcy Case and a previous Adversary Proceeding. These filings released him from an in personam judgment that was part of the Bankruptcy Rule 9019 Compromise.

[17] The Court in Tweedy included among the instances where disbarment was warranted the following:

(1) multiple incidences of fraud, misrepresentation, incompetence, negligence, unauthorized practice of law, etc., State ex rel. Oklahoma Bar Association v. Wolfe, 1997 OK 47, 937 P.2d 988; State ex rel. Oklahoma Bar Association v. Thomas, 1995 OK 145, 911 P.2d 907; State ex rel. Oklahoma Bar Association v. Hensley, 1983 OK 32, 661 P.2d 527; (2) conviction of wire fraud and money laundering, State ex rel. Oklahoma Bar Association v. Brunson, 1996 OK 32, 912 P.2d 876; (3) forging judge's signature on notice of guardianship proceeding, State ex rel. Oklahoma Bar Association v. Brown, 1993 OK 39, 863 P.2d 1108; (4) practice of law while bar license suspended for four years, continuing to advertise in phone book, and lying to clients about bar license, State ex rel. Oklahoma Bar Association v. Downing, 1993 OK 44, 863 P.2d 1111; (5) conversion of client funds, State ex rel. Oklahoma Bar Association v. Herlihy, 1991 OK 123, 827 P.2d 164; (6) conviction of felonies of possessing and transferring unregistered firearms, State ex rel. Oklahoma Bar Association v. Floyd, 1991 OK 34, 812 P.2d 378; and, (7) solicitation of a bribe while serving as a county judge, State ex rel. Oklahoma Bar Association v. James, 1969 OK 119, 463 P.2d 972.

State ex rel. Okla. Bar Ass'n v. Tweedy, 2000 OK 37, ¶ 51 n.9, 52 P.3d 1003, 1013 n.9.

[18] In State ex rel. Okla. Bar Ass'n v. Allder, 2002 OK 33, 48 P.3d 794, Mr. Allder failed to reveal to the Bankruptcy Court that the source of some of his fees came from loans made by finance companies to his clients immediately before bankruptcy. After a trial in the Bankruptcy Court, but prior to being sanctioned, Mr. Allder entered into a settlement agreement with the Bankruptcy Trustee, resulting in his being suspended from practicing there for a five-year period. The agreement was approved by the Bankruptcy Court and the U.S. District Court. This Court determined public censure to be the appropriate discipline, and the PRT, in its recommendation of public censure, thought substantial discipline had already been imposed on him by the Bankruptcy Court.

[19] In State ex rel. Okla. Bar Ass'n v. Burnett, 2004 OK 31, 91 P.3d 641, the Court determined a public reprimand to be the appropriate discipline where an attorney failed to notify the Oklahoma Bar Association of her disbarment by the U.S. Bankruptcy Court and the U.S. District Court for the Western District of Texas, in violation of Rule 7.7(a), RGDP, and failed to notify the out-of-state unauthorized practice of law committe in Texas of her engagement in the unauthorized practice of law. In determining the proper punishment the Court agreed with the PRT that she "clearly suffers from a lack of adequate supervision and training." Id., ¶ 14, 91 P.3d at 641.

 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1991 OK 34, 812 P.2d 378, 62 OBJ 1164, State ex rel. Oklahoma Bar Ass'n v. Floyd
Discussed
 1991 OK 123, 827 P.2d 164, 62 OBJ 3589, State ex rel. Oklahoma Bar Ass'n v. Herlihy
Discussed
 1993 OK 39, 863 P.2d 1108, 64 OBJ 1002, State ex rel. Oklahoma Bar Ass'n v. Brown
Discussed
 1993 OK 44, 863 P.2d 1111, 64 OBJ 1193, State ex rel. Oklahoma Bar Ass'n v. Downing
Discussed
 1997 OK 47, 937 P.2d 988, 68 OBJ 1364, State ex rel. Oklahoma Bar Association v. Wolfe
Discussed
 2001 OK 51, 28 P.3d 551, 72 OBJ 1921, STATE ex. rel. OKLAHOMA BAR ASSN. v. PATTERSON
Discussed at Length
 2002 OK 33, 48 P.3d 794, STATE ex. rel. OKLAHOMA BAR ASSOCIATION v. ALLDER
Discussed
 1969 OK 119, 463 P.2d 972, STATE EX REL. OKLAHOMA BAR ASSOCIATION v. JAMES
Discussed
 1995 OK 145, 911 P.2d 907, 66 OBJ 3991, State ex rel. Oklahoma Bar Assn. v. Thomas
Discussed
 2002 OK 81, 60 P.3d 1018, STATE ex. rel. OKLAHOMA BAR ASS'N v. HEINEN
Discussed at Length
 2004 OK 31, 91 P.3d 641, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BURNETT
Discussed
 1996 OK 32, 912 P.2d 876, 67 OBJ 863, State ex rel. Oklahoma Bar Assn. v. Brunson
Discussed
 2006 OK 50, 142 P.3d 420, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WILBURN
Discussed
 2006 OK 85, 152 P.3d 190, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ALLFORD
Discussed at Length
 2011 OK 71, 257 P.3d 1000, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HAYES
Discussed
 2013 OK 16, 297 P.3d 1248, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KLEINSMITH
Discussed
 2015 OK 25, 350 P.3d 131, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WINTORY
Discussed at Length
 2016 OK 11, 367 P.3d 498, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. LEONARD
Discussed at Length
 2016 OK 37, 369 P.3d 1074, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. OLIVER
Discussed
 2017 OK 44, IN THE MATTER OF THE SUSPENSION OF MEMBERS OF THE OKLAHOMA BAR ASSOCIATION
Cited
 2017 OK 45, IN THE MATTER OF THE SUSPENSION OF MEMBERS OF THE OKLAHOMA BAR ASSOCIATION
Cited
 2000 OK 37, 52 P.3d 1003, 71 OBJ 1176, State ex. rel. Oklahoma Bar Assn. v. Tweedy
Discussed at Length
 1998 OK 93, 976 P.2d 540, 69 OBJ 3235, State of Oklahoma ex rel. Oklahoma Bar Association v. Bransgrove
Discussed
 1983 OK 32, 661 P.2d 527, State ex rel. Oklahoma Bar Ass'n v. Hensley
Discussed